**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALFRED LEWIS, MATTHEW LOVELL, RICARDO LECKY, HERMAN ANTLEY and MAKANDA FORRESTER, individually and behalf of all other similarly situated persons,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**ALERT AMBULETTE SERVICE CORP., MARK HANUKOV, and JACOB HANUKOV BUS SERVICE CORP.**<br><br>**Defendants.** | **1:11-cv-00442-JBW -JMA** |

**BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS AND APPROVE CLASS
AND COLLECTIVE ACTION NOTICE**

Respectfully Submitted,

　　_/s/  Dan Getman_
Dan Getman (DG 4613)
Carol Richman (on the brief)(CR1256)
Getman Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

_Counsel for Plaintiffs_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iii

INTRODUCTION ......................................................................................1

STATEMENT OF FACTS ...........................................................................2

ARGUMENT...............................................................................................5

I. A CLASS ACTION IS APPROPRIATE IN THIS CASE.....................5

    A.  The Class is So Numerous that Joinder is Impractical ............7

    B.  Typicality and Commonality ...................................................9

    C.  Representativeness.................................................................13

        1. The Representatives Are Adequate................................13

        2. Class Counsel is Adequate............................................13

    D. Present Counsel Should Be Appointed Class Counsel ..........14

    E. The Requirements of 23(b)(3) Are Met..................................15

        1. Common Questions of Law and Fact Predominate ....15

        2. A Class Action Is a Superior Method of Adjudication ...............17

II. THE FLSA CLASS IS SIMILARLY SITUATED.............................18

    A.  The FLSA Is a Remedial Statute ..........................................18

    B.  The Class is Similarly Situated..............................................19

    C.  Notice Should Be Sent to Similarly Situated Employees ......21

III. DEFENDANTS SHOULD BE DIRECTED TO SUPPLY NAMES AND CONTACT INFORMATION TO FACILITATE PROMPT AND EFFECTIVE NOTICE TO PUTATIVE CLASS MEMBERS..........................................................................22

IV. PLAINTIFF'S PROPOSED NOTICE SHOULD BE MAILED AND POSTED.......................................................................................23

CONCLUSION.........................................................................................25

## TABLE OF AUTHORITIES

Cases:                                                                      Page(s):

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945)......................................................19

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .............................. 15-16

*Amendola v. Bristol-Myers Squibb Co,*
558 F.Supp.2d at 459 (S.D.N.Y. 2008)..................................................................21

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) .........6

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2nd Cir. 2000)...................................................................................10

*Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) ..................... 18

*Beall v. Tyler Technologies, Inc.*, No. 2-08-CV-422 (TJW),
2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) .....................................................25

*Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS,
2011 WL 2648879 (E.D.Cal. June 30, 2011) ........................................................12

*Braunstein v. Eastern Photographic Laboratories, Inc.*,
600 F.2d 335 (1979)...............................................................................................19

*Castillo v. P & R Enterprises, Inc.*,
517 F.Supp.2d 440 (D.D.C. 2007).........................................................................24

*Collins v. Cargill Meat Solutions Corp.*, No. 1:10–cv–00500 OWW MJS,
2011 WL 2580321 (E.D.Cal. June 28, 2011) ........................................................12

*Consolidated Rail Corp v. Town of Hyde Park*,
47 F.3d 474 (2nd Cir. 1995).....................................................................................8

*Crown, Cork & Steel Co., Inc. v. Parker,* 462 U.S. 345 (1983) ...........................22

*Davis v. Abercrombie & Fitch Co.*,
2008 WL 4702840 (S.D.N.Y. 2008).......................................................................23

*Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y. 1968) ...........................................8

*Frank v. Capital Cities Communications, Inc.*,
88 F.R.D. 674 (S.D.N.Y. 1981) .............................................................................24

iii

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
903 F.2d 176 (2d Cir. 1990) ........................................................................10

*Garza v. Chicago Transit Authority,* No. 00 C 0438,
2001 WL 503036 (N.D. Ill. May 8, 2001) ........................................................24

*Giles v. City of New York*, 41 F.Supp.2d 308 (S.D.N.Y. 1999)........................... 19

*Gortat v. Capala Brothers, Inc.,* 07 CV 3629,
2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ................................................ *passim*

*Guzman v. VLM, Inc.,* 07 CV 1126,
2008 WL 597186 (E.D.N.Y. Mar. 2, 2008).......................................................6, 17

*Harrington v. Educ. Mgmt. Corp.,* No. 02 Civ. 0787(HB),
2002 WL 1343753 (S.D.N.Y. June 19, 2002) ......................................................22

*Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132 (2d Cir. 1999)............................2

*Hernandez v. Starbucks Coffee Company*, 0:09-cv-60073-WPD, DE 300,
2011 WL 2712586 (S.D. Fla. June 29, 2011) ......................................................12

*Hirschfeld v. Stone,* 193 F.R.D. 175 (S.D.N.Y. 2000)............................................ 9

*Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165 (1989).............................. 19, 23

*Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249 (S.D.N.Y. 1997) .........................19, 21

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
239 F.R.D.363 (S.D.N.Y. 2007) .................................................................. *passim*

*In re Currency Conversion Fee Antitrust Litigation,* No. 03 Civ. 2843(WHP),
2004 WL 2750091 (S.D.N.Y. Dec. 2, 2004) ........................................................9

*In re Drexel Burnham Lambert Group, Inc.,*
960 F.2d 285 (2d Cir. 1992)........................................................................ 13

*In re Laser Arms Corp. Sec. Litig.,* 794 F.Supp. 475 (S.D.N.Y. 1989)...................8

*In re WorldCom, Inc. Securities Litigation,* 219 F.R.D. 267 (S.D.N.Y. 2003) .....16

*Initial Public Offering Securities Litigation v. Merrill Lynch & Co., Inc.*
471 F.3d 24 (2d Cir. 2006)........................................................................7

*Jacobsen v. Stop & Shop Supermarket Co.,* No. 02 Civ. 5915(DLC),
2003 WL 21136308 (S.D.N.Y. May 15, 2003) .................................................22

iv

*Jankowski v. Castaldi,* 01CV0164,
2006 WL 118973 (E.D.N.Y. Jan. 13, 2007) ...............................................6, 13, 18

*Johnson v. American Airlines,* 531 F.Supp. 957 (S.D. Tex. 1982)....................... 24

*Korn v. Franchard Corp.,* 456 F.2d 1206 (2d Cir.1972) ..................................... 8

*Kress v. PricewaterhouseCoopers,* LLP, 263 F.R.D. 623 (E.D. Ca. 2009)...........25

*Krueger v. New York Tel. Co.,* No. 93-178/179,
1993 WL 276058 (S.D.N.Y. July 21, 1993) ...........................................................20

*Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124 (N.D. Ca. 2009) .....................25

*Lynch v. United Services Auto. Ass'n,* 491 F.Supp.2d 357 (S.D.N.Y. 2007).........21

*Marisol v. Giuliana,* 126 F.3d 372 (2nd Cir. 1997)..................................................9

*Mascol v. E & L Transportation, Inc.,* No. CV-03-3343 CPS,
2005 WL 1541045 (E.D.N.Y. June 29, 2005) ..........................................................6

*Masson v. Ecolab, Inc.* No. 04 Civ. 4488(MBM),
2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005)................................................. 20-21

*McKinzie v. Westlake Hardware, Inc.,* No. 09-0796-CV-W-FJG,
2010 WL 2426310 (W.D.Mo. June 11, 2010) .......................................................25

*Moore v. PaineWebber, Inc.* 306 F.3d 1247(2d Cir. 2002) .................................15

*Noble v. 93 University Place Corp,* 224 F.R.D. 330 (S.D.N.Y. 2004).................15

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978).................................. 23

*Patton v. Thomson Corp.,* 364 F.Supp.2d 263 (E.D.N.Y. 2005) ..................... 20-22

*Pefanis v. Westway Diner, Inc.,* 2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008).......21

*Ramos v. SimplexGrinnell LP*, 1:07-cv-00981-SMG, DE 154,
2011 WL 2471584, (E.D.N.Y. June 21, 2011) ......................................................12

*Reynolds v. Giuliani,* 118 F.Supp.2d 352, 388 (S.D.N.Y. 2000).............................8

*Rivera, et al v. Alert Ambulette Service Corp., et al,* 1:10-cv-00348-FB –JO ........1

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993)..............................................7, 8

*Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147 (2d Cir. 2001) ...............9

*Romero v. Producers Dairy Foods, Inc.,*
235 F.R.D. 474 (E.D. Cal. 2006) ...................................................... 24

*Schwed v. General Electric Co.,* 159 F.R.D. 373 (N.D.N.Y. 1995) ......................19

*Shabazz v. Morgan Funding Corp.,* 07-Civ. 0126,
2010 WL 2505485 (S.D.N.Y. June 9, 2010) .........................................17

*Shankroff v. Advest, Inc.,* 112 F.R.D. 190 (S.D.N.Y. 1986) ...................................8

*Sherrill v. Sutherland Global Servs. Inc.,*
487 F.Supp.2d 344 (W.D.N.Y. 2007) .......................................................24

*Sipas v. Sammy's Fishbox, Inc.,* No. 05 Civ. 10319 (PAC),
2006 WL 1084556 (S.D.N.Y. April 24, 2006) .......................................21

*Smellie v. Mount Sinai Hospital,* No. 03Civ.0805(LTS)(DFE),
2004 WL 2725124 (S.D.N.Y. Nov. 29, 2004) ..........................................7

*Sobczak v. AWL Industries, Inc.,* 540 F.Supp.2d 354 (E.D.N.Y. 2007) ......... 20-22

*Soler v. G&U, Inc.,* 86 F.R.D. 524 (S.D.N.Y. 1980) ............................................24

*Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500 (S.D.N.Y. 1984) ..............8

*Spann v. AOL Time Warner, Inc.,* 219 F.R.D. 307 (S.D.N.Y. 2003) ....................10

*Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67 (E.D.N.Y. 2004) ..............17

*Torres v. Gristede's Operating Corp.,*
2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)................................. 20-21

*Vaicaitiene v. Partners in Care,* 2005 WL 1593053 (S.D.N.Y. July 6, 2005) ......22

*Veliz v. Cintas,* 2004 WL 2623909 (N.D. Cal. 2004) ..........................................24

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ........................................11

*Westerfield v. Wash Mut. Bank.,* No. 06-CV-2817,
2007 WL 2162989 (E.D.N.Y. Jul. 26, 2007).................................. 6, 17

*Wraga v. Marble Lite, Inc.,* No. 05 Civ. 5038,
2006 WL 2443554 (E.D.N.Y Aug. 22, 2006).......................................20

**<u>Statutes and Regulations</u>**

29 U.S.C. §216(b) ......................................................................... *passim*

Fed. R. Civ. P. 23 ........................................................................ *passim*

N.Y. Labor Law Art. 6 & 19 §§193 and 198-b ................................................1, 22

12 N.Y.C.R.R. §§142-1.1 §§142-2.1 and 142-2.4(a)............................................1, 3

29 U.S.C. § 216(b). ........................................................................ *passim*

N.Y. Labor Law §663(3) .................................................................... 9

### INTRODUCTION

This is a wage and hour case that raises claims under state and federal labor law. Plaintiffs bring this case as a collective action under the Fair Labor Standards Act (FLSA) on behalf of a class of ambulette drivers who transport Defendants' customers to and from medical appointments throughout the five boroughs of New York City. Plaintiffs were not paid time and one half for hours worked over 40 and often not paid minimum wage for all hours worked in a week. Defendants also withheld wages as a performance guarantee and deducted wages for impermissible reasons, including employer expenses such as uniforms and traffic tickets.[1] Plaintiffs generally worked twelve-hour shifts, but defendants failed to pay an additional hour of pay under New York's spread of hours requirement. Plaintiffs bring their federal overtime and minimum wage claims as a collective action under 29 U.S.C. §216(b). Plaintiffs also bring this case as a class action under Fed. R. Civ. P. 23 under New York overtime, minimum wage, spread of hours, and deductions laws. N.Y. Labor Law Art. 6 & 19, including §§193 and 198-b; 12 N.Y.C.R.R. §§142-1.1 §§142-2.1 and 142-2.4(a).

Defendants had a policy to pay class members a daily rate of pay that often did not fulfill minimum wage requirements and did not pay overtime, in violation of federal and state law. Defendants also had a policy of making deductions from Plaintiffs' wages upon hire and throughout their employment for reasons that solely benefitted Defendants. In this District in 2010, Defendants were sued in *Rivera, et al v. Alert Ambulette Service Corp., et al,* 1:10-cv-00348-FB –JO (dismissed in settlement) for wage and hour violations under the FLSA and New York State law.

---

[1] *Hudacs v. Celebrity Limousine Service Corp.,* 205 A.D.2d 155, 617 N.Y.S.2d 1006 (App. Div. 3d Dept.1994).

Plaintiffs seek class action certification, under Rule 23, for New York State Labor Law claims and approval of the class notice informing class members of the pending action and the mechanisms by which they may assert FLSA and state claims in this case.

## <u>STATEMENT OF FACTS</u>

Defendant Alert Ambulette Service Corp. ("Alert Ambulette") is a privately owned company, headquartered in Brooklyn, New York that is owned and operated by Defendant Mark Hanukov. Alert Ambulette transports customers to and from medical appointments throughout the five boroughs of New York City. Declarations of the named plaintiffs show that Mark Hanukov is personally involved in any issues regarding Plaintiffs' scheduling and pay.

Defendants' policy was to pay a daily rate that did not provide all Plaintiffs with the minimum wage for all hours worked and did not pay any Plaintiffs overtime compensation at the rate of time and one half. Plaintiffs worked a daily shift of twelve hours. For example, the named Plaintiffs worked from 7:00 am to 7:00 pm five days a week. *See* Herman Decl. ¶ 8; Forrester Decl. ¶ 9; Lecky Decl. ¶ 8; Lewis Decl. ¶ 8; Lovell Decl. ¶ 8; Tayyabkhan Decl. ¶ 7, Tayyabkhan Ex. A. Defendants paid Plaintiffs a flat rate between $350 and $500 per week for five days of twelve-hour shifts. *See* Antley Decl. ¶ 12 ($425/week); Forrester Decl. ¶ 13 ($350/week); Lecky Decl. ¶ 12 ($425/week); Lewis Decl. ¶ 12 ($85/ day); Lovell Decl. ¶ 12 ($425/week, raised to $500/week); Tayyabkhan Decl. ¶ 11; Tayyabkhan Ex. C.

Plaintiffs occasionally worked six days per week, generally on Saturdays. When a Plaintiff worked a sixth day in a single work week, the daily rate for the sixth day varied from $75.00 to $110.00 a day, depending, in part, on the length of the workday, which could be as long as 14 hours. *See* Antley Decl. ¶ 15: ($110 for a 14 hour day); Forrester, Decl. ¶ 17 (same

daily rate for sixth day); Lecky Decl. ¶ 15 ($100/day on Saturdays); Lovell Decl. ¶ 15 ($75 a sixth day); Tayyabkhan Decl. ¶ 11(d); Tayyabkhan Ex. C and D.

Defendant adjusted plaintiffs' pay up or down based up whether they worked a longer or shorter shift. When a Plaintiff worked more hours in a day than his twelve hour shift, he was usually paid an additional hourly rate. *See e.g.* Antley Decl. ¶ 14; Lecky Decl. ¶ 14; Lovell Decl. ¶¶ 9, 14 (no extra pay when shift took longer, but received additional pay if he worked additional hours over twelve hour shift). *See also* Tayyabkhan Decl. ¶ 11(c); Tayyabkhan Ex C. However, Defendants reduced a Plaintiff's weekly pay if he was late for any of his scheduled shift times by just a few minutes. Antley Decl. ¶ 16 (weekly pay would be reduced proportionally for all the minutes he was late that week); Forrester Decl. ¶ 18 (same); Lewis Decl. ¶ 14 (same); Lovell Decl. ¶ 16 (same). *See also* Tayyabkhan Decl. ¶ 11(c); Tayyabkhan Ex C.

Plaintiffs' start and end times were usually more than ten hours apart. However, Defendants did not provide spread of hours pay to any Plaintiffs as required by New York Labor Law, 12 N.Y.C.R.R. § 142-2.4(a) when Plaintiffs start and end times exceeded 10 hours. (Antley Decl. ¶ 25-26; Forrester Decl. ¶ 29-30; Lecky Decl. ¶ 23-24; Lewis Decl. ¶ 21-22; Lovell Decl. ¶ 24-25).

Defendants also made deduction from Plaintiffs' wages, in violation of New York State Labor Law. If a Plaintiff received a parking ticket while on the job, sometimes even including tickets that resulted from the necessary drop-off or pick-up of passengers in front of a medical facility, the amount of the ticket was deducted from the Plaintiff's pay. *See* Antley Decl. ¶ 21 (responsible for all parking and traffic tickets); Lecky Decl. ¶ 20 (same); Lovell Decl. ¶ 21 (same); Forrester Decl. ¶ 23; (responsible for parking or traffic tickets, but not for tickets issued

in front of a customer's home or a hospital); Lewis Decl. ¶ 19 (same as Forrester); Tayyabkhan Decl. ¶ 13; Tayyabkhan Ex G. Defendants also made unlawful deductions from Plaintiffs' wages when they commenced working for Defendants to act as a performance guarantee. Plaintiffs were told that deducted wages would be used to cover any future damages to the ambulette, pay for future parking or traffic tickets, and guarantee their proper notice if they left the company. *See* Antley Decl. ¶ 20; Forrester Decl. ¶. 22; Lecky Decl. ¶.19; Lewis Decl. ¶ 18; Lovell, Decl. ¶ 20).

Plaintiff ANTLEY worked for Defendants from approximately March/April of 2006 until March/April 2007. Antley Decl. ¶ 2-3. Plaintiff FORRESTER worked for Defendants from approximately December 2003 until September 2009. Forrester Decl. ¶ 2-3. Plaintiff LEWIS worked for Defendants from approximately May 2006 until November 2010. Lewis Decl. ¶ 2-3. Plaintiff LOVELL worked for Defendants from approximately November 2005 until March 2009. Lovell Decl. ¶ 2-3. Plaintiff LECKY worked for Defendants from approximately August 2006 until January 2007 Lecky Decl. ¶ 2-3.

Plaintiffs seek unpaid wages, liquidated damages, interest, costs and attorneys' fees, as well as declaratory relief under the FLSA and state minimum wage and wage payment laws. The named Plaintiffs bring this claim individually and on behalf of other similarly situated employees under the collective action provisions of the FLSA, 29 U.S.C. § 216(b). Because the dates of his employment are beyond the statute of limitations set forth in the FLSA, Plaintiff LECKY brings claims on behalf of himself and other class members under New York State law only. All the named Plaintiffs bring state claims individually and on behalf of a class under the class action rules of Fed. R. Civ. P. Rule 23.

4

The named Plaintiffs bring the Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of similarly situated persons consisting of "all drivers for ALERT AMBULETTE within the limitation period." The claim limitation period includes the six years preceding the filing of the initial complaint up through the date of final judgment herein and subject to any equitable tolling for any applicable period preceding the limitation period. Second Am. Cplt. ¶ 20.

The named Plaintiffs (with the exception of Plaintiff Lecky), bring this case under the collective action provision of the FLSA, as set forth in 29 U.S.C. §216(b), on behalf of themselves and a class of persons throughout the U.S. consisting of "all drivers for ALERT AMBULETTE within the limitation period." The claim limitation period includes the three years preceding the filing of the initial complaint up through the date of final judgment herein and subject to any equitable tolling for any applicable period preceding the limitation period, as well as the eighty one day period covered by tolling agreements between the parties. *See* Docs 9 (36 days) and 11-1 (45 days). Excluded from any Rule 23 or Collective Action Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in any Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from any Rule 23 Class. Second Am. Cplt. ¶ 21.

## ARGUMENT

### I. A CLASS ACTION IS APPROPRIATE IN THIS CASE

Courts in this District and in the Southern District of New York regularly permit classing

state wage claims along with a federal FLSA collective action. *Gortat v. Capala Brothers, Inc.*, 07 CV 3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) (certifying FLSA collective action and New York Labor law claims under Rule 23); *Guzman v. VLM, Inc.,* 07 CV 1126, 2008 WL 597186 at *10 (E.D.N.Y. Mar. 2, 2008) (certifying State labor law claims in previously certified FLSA collective action); *Westerfield v. Wash Mut. Bank.,* No. 06-CV-2817, 2007 WL 2162989 (E.D.N.Y. Jul. 26, 2007) (refusing to dismiss Rule 23 class claims under New York, California, Illinois and New Jersey State law filed in FLSA collective action); *Jankowski v. Castaldi,* 01CV0164, 2006 WL 118973 at *9 (E.D.N.Y. Jan. 13, 2007) (certifying claims under New York labor law in FLSA action); *Mascol v. E & L Transportation, Inc*., No. CV-03-3343 CPS, 2005 WL 1541045 (E.D.N.Y. June 29, 2005) (Sifton, J.); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001)(Hellerstein, J).[2] The courts clearly have not had difficulty administering state class actions and FLSA collective actions in the past. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 2007 WL 268233 (S.D.N.Y. 2007). [3]

The class notice required by a combined FLSA collective action and a state class is not too complex to be manageable. "It is true that the maintenance of an opt-in FLSA collective action concurrently with an opt-out Rule 23(b)(3) class action on the state law claims raises particular challenges from the communications point of view. The Court is confident, however,

---

[2] In *Ansoumana,* the seminal case in New York, Judge Hellerstein found that classing a state claim in no way conflicted with the FLSA's collective action procedures and there was a "substantial judicial interest to avoid additional and unnecessary lawsuits of similar issues in other state and federal courts." 201 F.R.D. at 89. The Court found that because the FLSA claims and the state wage claims "arise from the same nucleus of operative facts, are substantially related to each other, and naturally would be treated as one case and controversy" the state claims ought to be brought with the federal under doctrines of supplemental jurisdiction.

[3] As the Court found in Ansoumana, there is no requirement that state class action procedural rules should be adopted into federal class action procedures, however the Court there implemented CPLR 901(b), by limiting the class claims to those without liquidated damages. However, the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., -- U.S. --, 130 S.Ct. 1431 (2010) held that federal class actions based on state claims were to be governed by Rule 23 and not by state class rules.

that, with appropriate attention from able counsel and the Court, class members can be afforded effective notice that will appropriately protect their rights and make clear their opportunities in connection with this litigation." *Smellie v. Mount Sinai Hospital,* No. 03Civ.0805(LTS)(DFE), 2004 WL 2725124 *7 (S.D.N.Y. Nov. 29, 2004). The proposed notice submitted by plaintiff shows that there is no inherent complexity too great for reasonable notice to be practicable. *See* Ex 1. At this point, Courts have certified hundreds, if not thousands of combined class and collective actions and never has such a court found the case too complex to manage.

The Second Circuit clarified the court's responsibilities in determining a Rule 23 class certification, in *Initial Public Offering Securities Litigation v. Merrill Lynch & Co., Inc.* 471 F.3d 24, 41 (2nd Cir. 2006), "a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met." The Court went on to find that the fact that determining a Rule 23 requirement overlapped with a merits review did not preclude such a review.

### A. The Class is So Numerous that Joinder is Impractical

Defendants have already supplied payroll records to the Plaintiffs in this case which demonstrate that there are more than forty class members. *See* Tayyabkhan Decl. at ¶ 15 (finding as many as 100 class members); Tayyabkhan Exhs. A and H.  In fact, taking merely a sampling of one hours record per quarter, demonstrates that there are more than unique names in that sampling. Thus the total class size is likely much larger.

Courts do not have a bright line rule for numerosity, however, generally classes of more than forty individuals fulfill the numerosity requirement of Rule 23(a)(1). *Iglesias- Mendoza v. La Belle Farm, Inc.*, 2007 WL 268233, *6 (S.D.N.Y. 2007) *citing Robidoux v. Celani*, 987 F.2d

7

931 (2nd Cir. 1993) (joinder can be impracticable where the prospective class consists of 40 members or more).  *See also Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2nd Cir.1972) ("Forty investors have been held to represent a sufficiently large group" for class action); *Consolidated Rail Corp v. Town of Hyde Park*, 47 F.3d 474 (2nd Cir. 1995) ("numerosity is presumed at a level of 40 members."). Defendants' records show that there were approximately 105  class members working in New York within the six-year statute of limitation period to the present date.  *See* Tayyabkhan Decl. ¶ 15; Tayyabkhan Exhs A and H.

In satisfying Rule 23's numerosity requirement, "plaintiff's failure to state the exact number of the class does not militate against the maintenance of a class action". *Shankroff v. Advest, Inc.,* 112 F.R.D. 190 (S.D.N.Y. 1986); *Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 503 (S.D.N.Y. 1984) (citations omitted); *Dolgow v. Anderson*, 43 F.R.D. 472, 492-93 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2nd Cir. 1970). "Impracticable" simply means difficult or inconvenient, not impossible. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2nd Cir. 1993); *Reynolds v. Giuliani*, 118 F.Supp.2d 352, 388 (S.D.N.Y. 2000). Further, plaintiff does not need to provide a precise number for the class size. *See Robidoux*, 987 F.2d at 935; *In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 494 (S.D.N.Y. 1989) ("Since the numerosity requirement speaks in terms of impracticability rather than impossibility, plaintiffs need not enumerate the precise number of potential plaintiffs in the class when reasonable estimates will suffice."). Nor does meeting the numerosity requirement rely on having forty or more plaintiffs. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) (impracticality of joinder depends on the circumstances of the case, not on mere numbers); *Toure v. Cent. Parking Sys.,* 2007 WL 2872455 at *6 fn 2 (S.D.N.Y. 2007) (court would certify State law claims that parallel FLSA

claims for class of 23-25 because "judicial economy would be served by hearing all overtime claims in one action.")

In this case, class members include current and former employees who worked for the defendant within the past 6 years preceding the filing the complaint. N.Y. Labor Law §663(3) ("Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years"). Although it is unclear precisely how many employees are members of the class, there are likely more than a hundred and certainly there are more than forty class members. Numerosity is clearly met.

### B. Typicality and Commonality

The requirement of typicality, Rule 23(a)(2), overlaps with that of commonality, Rule 23(a)(3). *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D.363 (S.D.N.Y. 2007); In *re Currency Conversion Fee Antitrust Litigation,* No. 03 Civ. 2843(WHP), 2004 WL 2750091 (S.D.N.Y. Dec. 2, 2004) (*citing Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).").

"The crux of [the typicality] requirement[ ] is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol*, 126 F.3d at 376 (internal citation omitted); *accord Hirschfeld v. Stone*, 193 F.R.D. 175, 182-83 (S.D.N.Y. 2000). Specifically, the "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability ... irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux*, 987 F.2d at 936-37; *accord Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2nd Cir. 2001). However "there is no

9

requirement that the precise factual circumstances of each class plaintiff's claim be shared by the named plaintiff." *Gortat v. Capala Broths., Inc.*, 07-CV-3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010). The factual background of the named plaintiffs' claim need not be identical to that of the putative class members as long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad*, 191 F.3d at 293 (citation omitted). "Under this court's jurisprudence, a single common question of law or fact may suffice." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 2007 WL 268233, *7 (S.D.N.Y. 2007); *see also Marisol v. Giuliana*, 126 F.3d 372 (2nd Cir. 1997).

"In assessing the typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by the class representatives and members of the class." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003). Although "the mere existence of individualized factual questions with respect to the class representative's claims will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2nd Cir. 2000) (*citation omitted*); *see also*, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2nd Cir. 1990).

Defendants' illegal pay practices with respect to overtime, spread of hours, and deductions from wages were identical for the named Plaintiffs and the entire class. Defendants paid Plaintiffs a set daily rate and failed to pay premium overtime pay at the rate of time and one half, paid all Plaintiffs "off the books" wages, and made identical deductions in the first weeks of

work for a performance guarantee and thereafter made deductions from pay for other employer expenses such as parking tickets, and uniforms. [4] *See e.g.* Lewis Decl. ¶¶ 18-20.

While Defendants had a uniform policy not to provide a minimum wage "bump-up" for employees earning below minimum wage, those Plaintiffs who were paid a daily rate high enough to satisfy minimum wage requirements for all hours they worked did not suffer minimum wage violations. However, many Plaintiffs did suffer minimum wage violations, and the amount of the violations can easily be identified at a later date by discovering each Plaintiff's daily rate of pay over the course of his employment and dividing that daily rate by the twelve hour shift the Plaintiff worked.[5]  This information will similarly show Defendants' liability as to "spread of hours" claims because this claim is applicable to those Plaintiffs who have minimum wage claims. Thus, Plaintiffs' claims,, which resulted from Defendants' uniform pay practices, are well within Fed. R. Civ. P. 23's notion of commonality and typicality. *Robidoux*, 987 F.2d at 936-37. There is no defense applicable only to the claims of the named Plaintiffs or the class. Commonality and typicality exist here.

The U.S. Supreme Court recently issued a significant commonality decision in *Wal-Mart Stores, Inc. v. Dukes*, a Title VII discrimination case. 131 S.Ct. 2541 (2011). The Supreme Court held that the named plaintiffs and passive Rule 23 class did not meet the commonality requirements under Rule 23(a)(2) because there was not a common policy or practice to "glue" the claims together. *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2554. In *Wal-Mart* there were over 3,400 stores, and they employed over one million workers throughout the country. *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2546. Significantly, Wal-Mart had an anti-discrimination policy. The Court explained that:

---

[4] Only some of the Plaintiffs may have suffered minimum wage violations depending upon the daily rate paid by defendants and the amount of deductions that may have been made in any given week, however, these FLSA and NY Labor Law violations must also be plead and tried under the rules prohibiting the splitting of claims.

[5] This manner of inquiry into payroll records would also shed light on minimum wage violations that occurred through Defendants making deductions from Plaintiffs' wages.

11

> Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reason for all those decision together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

*Wal-Mart Stores, Inc.*, 131 S.Ct. at 2552. Thus, Plaintiffs failed to meet the commonality requirements.

Since *Dukes*, district courts have repeatedly reiterated that wage and hour Rule 23 class and FLSA collective actions are still appropriate when uniform pay practices are at issue. In *Ramos v. SimplexGrinnell LP* the Court found that "plaintiffs have come forward with significant proof that defendant routinely failed to account for labor performed on public works projects and pay prevailing wages for covered work." *Ramos v. SimplexGrinnell LP*, 1:07-cv-00981-SMG, DE 154, *9, 2011 WL 2471584, *5 (E.D.N.Y. June 21, 2011). *Ramos*, like this case, is different than *Dukes* because Wal-Mart had an "'announced' policy prohibiting discrimination", whereas in *Ramos*, the employer's policy was not to pay the prevailing wage on public works projects. *Ramos*, 1:07-cv-00981-SMG, DE 154, *10.

In *Hernandez v. Starbucks Coffee Company*, a district court in the Southern District of Florida refused to decertify a FLSA opt-in class because "the common evidence and testimony of Defendant's own corporate representatives" "suggest(s) the same class treatment". 0:09-cv-60073-WPD, DE 300, *5-6, 2011 WL 2712586, *3 (S.D. Fla. June 29, 2011). Other district courts continue to find commonality despite the *Dukes* decision. *Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, *5 (E.D.Cal. June 30, 2011) (certifying settlement class); *Collins v. Cargill Meat Solutions Corp.*, No. 1:10–cv–00500 OWW MJS, 2011 WL 2580321, *5 (E.D.Cal. June 28, 2011) (noting that "[e]very Class Member was paid under the same pay practices as every other class members. The commonality requirement is satisfied."). Since Plaintiffs allege and demonstrate that Defendants used common pay practices

12

for all employees working from a single site, Plaintiffs have demonstrated both commonality and typicality.

### C. Representativeness

Rule 23(a)(4) provides that, in order to certify a class, its proponents must show that "the representative parties will fairly and adequately protect the interests of the class" Fed. R. Civ. P. 23(a)(4). The Second Circuit Court of Appeals has held that the threshold for meeting "adequacy of representation" is "[first,] class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2nd Cir. 1992) (internal citations omitted); *Jankowski v. Castaldi,* 01CV0164, 2006 WL 118973 at *3-4 (E.D.N.Y. Jan. 13, 2007).

#### 1.      *The Representatives Are Adequate*

The class members do not have interests that are antagonistic to one another. The Plaintiffs raise state claims that are applicable to all members of the class. The interests of the named Plaintiffs -- to collect unpaid wages -- does not differ from those of the class. It is sufficient, as is the case here, that the representative plaintiffs have adequate personal knowledge of the essential facts of the case. *See Iglesia-Mendoza v. La Belle Farm, Inc.*, 2007 WL 268233, *8. Such knowledge is demonstrated by each named Plaintiff declaration attached herein.

#### 2. Class Counsel is Adequate

Based on the declaration of class counsel, adequacy of counsel is also assured. Plaintiffs' counsel Dan Getman has significant experience handling class actions, having successfully litigated numerous class actions during his 26 years of legal practice. Getman Decl. ¶ 2, 18. Further, Plaintiffs' counsel is experienced in handling employee wage and hour cases, having handled FLSA litigation since 1989. Id. at ¶ 19. Currently, he is handling numerous wage and

hour cases and has handled many such cases in the past. *See Id.* ¶¶ 17-19. Plaintiffs' counsel has also handled class actions of state wage claims brought with FLSA collective actions before Judge John Gleeson, in the Eastern District and Judges Robinson, Brieant, Marrero and Koeltl in the Southern District of New York. *See id.* at ¶ 18. Plaintiffs' counsel has successfully handled numerous other class actions as fully detailed in his declaration**.** Getman & Sweeney is a four-attorney firm with six paralegals, all of whom are engaged exclusively in handling wage and hour cases on behalf of individuals and classes around the country. The firm keeps a low caseload so that each case is adequately staffed according to its needs. The bios of all staff are stated on the firm's website, which is attached hereto. Getman Ex. 2. The firm is currently litigating another wage and hour case in the Eastern District of New York, a multistate class and collective action against Roto-Rooter on behalf of its plumbers. *Morangelli v. Chemed Corp.*, --- F.R.D. ----, No. 10 Civ. 0876(BMC), 2011 WL 2485602, (E.D.N.Y. June 16,2011)(Cogan, J), in which the Court noted:

> Defendants do not challenge the adequacy of the class counsel. They would be hard-pressed to; as another court recently noted, counsel's qualifications are "stellar" and this element is "easily met." *Bredbenner v. Liberty Travel, Inc.*, No. 09–905, 2011 U.S. Dist. LEXIS 38663, at *22 (D.N.J. Apr. 8, 2011).

*Id., at *18.* Representativeness is established.

### D. Present Counsel Should Be Appointed Class Counsel

If certification is granted, Rule 23(g) provides that the court must appoint class counsel. To that end, the court must consider the following: "[(1)] the work counsel has done in identifying or investigating potential claims in the action, [(2)] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [(3)] counsel's knowledge of the applicable law, and [(4)] the resources counsel will commit to representing the class." The court may consider any "other matter pertinent to counsel's ability to

14

fairly and adequately represent the interests of the class." *Noble v. 93 University Place Corp,* 224 F.R.D. 330, 339-340 (S.D.N.Y. 2004).

Present counsel has handled this matter from the outset, performing all the investigation and identification of claims. Counsel handles wage and hour cases and has in excess of 26 years of law practice. *See* Getman Decl., ¶¶ 2, 17-19. As noted above and detailed in class counsel's declaration, counsel has handled numerous class and collective actions. Class counsel will commit the necessary resources to representing the class, as he has in previous class representations. *See id*, ¶¶ 7-15.

### E. The Requirements of 23(b)(3) Are Met.

Under Rule 23(b)(3), a class may be certified only where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, common questions of law and fact predominate and a class action is a superior method of adjudication.

### 1. Common Questions of Law and Fact Predominate

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *See Moore v. PaineWebber, Inc.* 306 F.3d 1247, 1252 (2d Cir. 2002). Predominance will be established if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* Consequently, to determine whether common questions of law or fact predominate, a court must focus "on the legal or factual questions that qualify each class member's case as a genuine controversy ... [and] test[ ] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v.*

*Windsor,* 521 U.S. 591, 623 (1997); *see also, In re Visa Check/MasterMoney*, 280 F.3d 124, 135 (2nd Cir. 2001); *In re WorldCom, Inc. Securities Litigation,* 219 F.R.D. 267, 287-288 (S.D.N.Y. 2003).

The predominant legal and factual issues in this case are issues that apply across the class. The predominant legal issues for the class involve whether Defendants' pay practices violated New York State Labor Law. The first legal issue is whether Defendants violated the law by not paying class members time and one half their regular rate of pay for hours worked more than 40 in a week. The second legal issue is whether Defendants violated the law by not providing the Plaintiffs payment for the spread of hours when Plaintiffs' start and end times were more than ten hours apart. The third legal issue is whether Defendants made illegal deductions from Plaintiffs' wages.[6] Of course there are subsidiary legal issues that are also common to the entire class as well. These include whether the Defendants employed plaintiffs, whether the Defendants acted willfully, negligently, or in good faith in deciding not to pay overtime, minimum wage, spread of hours pay, or by making deductions for expenses which are deemed employer expenses as a matter of law, and whether any of defendants' affirmative defenses are applicable.

All of these issues are subject to generalized proof. Once those class-wide issues are resolved, the remaining factual questions are minor, *e.g.*, how many overtime hours did a particular class member work. As the court found in *Iglesias-Mendoza v. La Belle Farm, Inc.*, "[t]he issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than 40 hours a week and were not. These are perfect questions for class

---

[6]The only other issue is whether Defendants violated the law by paying class members a daily flat rate that often did not provide the NYS minimum wage for each hour a Plaintiff worked. This factual issue is determinable by comparing the payroll records of hours worked in a week with the applicable state minimum wage rate. This issue is readily determinable through defendant's pay records and while the issue is entwined with other pay violations (and so must be brought with this litigation) it does not predominate over the other issues applicable to all drivers (overtime, deductions, and spread of hours pay).

16

treatment. Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement." 2007 WL 268233, \*9. Even if some testimony were required to prove the extent of damages, where common questions of law and fact predominate with respect to liability, as they do here, the existence of individual questions as to damages is generally unimportant. *See, In re Visa Check Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001) (if common issues predominate as to liability, court should ordinarily find predominance even if some "individualized damage issues" exist); *Shabazz v. Morgan Funding Corp.,* 07-Civ. 0126, 2010 WL 2505485 (S.D.N.Y. June 9, 2010) ("Any class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations do not preclude class certification."); *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 80 (E.D.N.Y. 2004).

### *2. A Class Action Is a Superior Method of Adjudication*

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. The court should consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." *Noble v. 93 University Place Corp.,* 224 F.R.D. 330, 339 (S.D.N.Y. 2004). Courts in this district have made clear that there are no manageability problems inherent in litigating FLSA collective action claims and Rule 23 State law claims together. *See, e.g., Gortat v. Capala Brothers, Inc.*, 07 CV 3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) (certifying FLSA collective action and New York Labor law claims under Rule 23); *Guzman v. VLM, Inc.,* 07 CV 1126, 2008 WL 597186 at \*10 (E.D.N.Y. Mar. 2, 2008) (certifying State labor law claims in previously certified FLSA collective action); *Westerfield v. Wash Mut. Bank.,* No. 06-CV-2817, 2007 WL 2162989 (E.D.N.Y. Jul. 26, 2007) (refusing to dismiss Rule 23 class claims

17

under New York, California, Illinois and New Jersey State law filed in FLSA collective action); *Jankowski v. Castaldi,* 01CV0164, 2006 WL 118973 at *9 (E.D.N.Y. Jan. 13, 2007) (certifying claims under New York labor law in FLSA action). Here the Plaintiffs are relatively low wage earners, whose claims can be easily handled on a class-wide basis. While the claims amount to significant sums for the drivers who were shorted pay, the sums withheld are not so large as to interest many attorneys who might handle individual litigation for the drivers.

Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims. The management of a class action in this matter is not complex and the all legal and factual issues can be resolved in a single proceeding. Resolving the predominant issues in a single action is more efficient than re-litigating them in many different individual actions. Adjudication of the common issues of law and fact is in the interest of all class members and they are well represented by the lead plaintiff and counsel. It avoids competing decisions on the predominant issues and offers finality. There is no device other than a class action that can resolve these matters as efficiently as a class action.

## II.    THE FLSA CLASS IS SIMILARLY SITUATED

### A. The FLSA Is a Remedial Statute

"The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . . [and to ensure that employees] would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739 (1981). To protect against excessive hours of work, the statute requires that employers pay employees for hours in excess of 40 in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1).

The FLSA was designed "'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' ... Any

18

exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. " *A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945). The FLSA's overtime rules, "like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Giles v. City of New York*, 41 F.Supp.2d 308, 316 (S.D.N.Y. 1999)(quoting *Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.*, 321 U.S. 590 (1944)).

The FLSA's collective action provisions are an important aspect of achieving the statute's remedial purpose. Section 216(b) of FLSA authorizes any one or more employees to sue an employer for unpaid overtime compensation and liquidated damages on behalf of himself and other employees similarly situated. The collective action procedure "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman - LaRoche v. Sperling*, 493 U.S. 165, 170-71 (1989). Sending notice to notify all similarly situated employees of the action "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (1979).

**B. The Class is Similarly Situated**

The strict requirements of Fed. R. Civ. P. Rule 23 do not apply to FLSA "collective actions." 29 U.S.C. §216(b). Under §216(b) collective actions, numerosity, typicality, commonality and representativeness are not in issue. Rather, there is only a threshold issue of whether the group is "similarly situated." 29 U.S.C. §216(b)*; Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) (Sotomayor, J.). "It is unnecessary to show that putative class members share identical positions." *Schwed v. General Electric Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995). The question is whether there is a "factual nexus between [a named plaintiff's]

19

situation and the situation of other current and former [employees]." *Sbarro,* 982 F. Supp. at 262; *see also Sobczak v. AWL Industries, Inc.* 540 F.Supp.2d 354, 362 (E.D.N.Y. 2007); *Wraga v. Marble Lite, Inc.,* No. 05 Civ. 5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006).

In *Sbarro*, the Court noted that it need not evaluate the merits nor wait for the completion of discovery. "To the contrary, the courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." *Id.,* 982 F. Supp. at 262.; *see also Patton v. The Thomson Corp.,* 364 F.Supp.2d 263, 268 (E.D.N.Y.2005)(early notice necessary "to preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase."). When collective action certification is sought early in a case, "the court applies 'a fairly lenient standard' and (when it does so) typically grants 'conditional certification.'" *Torres*, 2006 WL 2819730, at 7 (citations omitted). "Hence, the merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated." *Masson v. Ecolab, Inc.* No. 04 Civ. 4488(MBM), 2005 WL 2000133 *13(S.D.N.Y. Aug. 17, 2005) *citing Sbarro,* 982 F.Supp. at 262.

Notice should be sent early because, unlike a Rule 23 class action, the statute of limitations continues to run on class members until they opt in. 29 U.S.C. §255. As notice is delayed, claims die daily. *Sbarro*, 982 F.Supp. at 260. While early notice serves the FLSA's remedial purposes, it does not prejudice the employer. *Krueger v. New York Tel. Co.,* No. 93-178/179, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case."); *accord Masson* 2005 WL 2000133, at *15.

20

Courts regularly exercise their discretion to order notice be sent to a class of similarly situated employees early in a litigation. *See*, *e.g.*, *Sobczak*, 540 F.Supp.2d at 362-63; *Gortat v. Capala Bros., Inc.,* No. 07-CV-3629, 2010 WL 1423018, 9 (E.D.N.Y. April 9, 2010); *Patton,* 364 F.Supp.2d at 267; *Amendola v. Bristol-Myers Squibb Co,* 558 F.Supp.2d at 459, 466-67 (S.D.N.Y. 2008); *Pefanis v. Westway Diner, Inc.*, 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008); *Iglesias-Mendoza,* 239 F.R.D.363*; Sipas v. Sammy's Fishbox, Inc.,* No. 05 Civ. 10319 (PAC), 2006 WL 1084556 (S.D.N.Y. April 24, 2006); *Torres v. Gristede's Operating Corp.,* 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006*); Masson,* 2005 WL 2000133, at *13; *Lynch,* 491 F.Supp.2d at 371. Accordingly, notice should not be delayed for discovery or the evaluation of the merits of claims. *Masson*, 2005 WL 2000133, at *13, *citing Sbarro,* 982 F.Supp. at 262.

In this case, Plaintiffs were not compensated at time and one-half for their overtime hours and not all Plaintiffs were paid the minimum wage for all hours worked, as mandated by the Fair Labor Standards Act. Plaintiffs' pay was further reduced by deductions that solely benefited Defendants resulting in further minimum wage violations. (Antley Decl. ¶ 20-22; Forrester Decl. ¶ 22-26; Lecky Decl. ¶ 19-21; Lewis Decl. ¶ 18-20; Lovell Decl. ¶. 20-22). Plaintiffs and the members of the class are similarly situated for purposes of the FLSA's collective action provisions. All class members were subject to the same pay policies that resulted in FLSA violations. This class should be certified so that Plaintiffs are compensated for Defendants' unlawful practices.

### C. Notice Should Be Sent to Similarly Situated Employees

The statute of limitations on FLSA claims allows claims going back two years from commencing an action, or three years if the employer acted willfully. 29 C.F.R. §255(a). Plaintiffs' complaint alleges that defendant acted willfully. FLSA class notices are routinely

delivered to all class members who are within the three year limitation period.[7] *Patton v. The Thomson Corp.,* 364 F.Supp.2d 263, 266 (E.D.N.Y.2005); *Jacobsen v. Stop & Shop Supermarket Co.,* No. 02 Civ. 5915(DLC), 2003 WL 21136308, at *4 (S.D.N.Y. May 15, 2003); *Harrington v. Educ. Mgmt. Corp.,* No. 02 Civ. 0787(HB), 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002).[8] The statute of limitations on New York state law claims is six years, however this period is measured from the filing of the complaint. *Crown, Cork & Steel Co., Inc. v. Parker*, 462 U.S. 345 (1983)**;** N.Y. Labor Law Article 6, §198(3).

Plaintiffs have proposed a Rule 23 class notice that follows the standard notice forms, which have been issued in class and collective action wage cases in New York. Ex. 1. This notice should be sent to all similarly situated employees who worked for Alert Ambulette within six years of this case being filed.  Accordingly, the Plaintiff asks the Court to conditionally certify this action as an FLSA nationwide collective action and authorize notice, in the form attached as Exhibit 1, to be issued to all similarly-situated employees employed by Alert Ambulette in the six years proceeding the notice date.

## III.  DEFENDANTS SHOULD BE DIRECTED TO SUPPLY NAMES AND CONTACT INFORMATION TO FACILITATE PROMPT AND EFFECTIVE NOTICE TO PUTATIVE CLASS MEMBERS.

Defendant should be directed to provide names, addresses, email addresses, last four digits of social security numbers, and telephone numbers of the class members in an electronic format to facilitate notice. Federal Rule of Civil Procedure 23(c)(2)(B) provides that "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." As the

---

[7] Otherwise the statute of limitation would operate to bar claims well before the question of wilfullness was decided by the Court.

[8] Whether Alert Ambulette violated the FLSA and did so willfully are issues involving the merits of the action, not for resolution at the notice stage. *Vaicaitiene v. Partners in Care*, 2005 WL 1593053, at *7 (S.D.N.Y. July 6, 2005). Until the issue is resolved, all similarly situated employees with potential claims should be given notice and an opportunity to join. *Id.*,

defendant has the contact information of its current and former employees, the Court should order the defendant to provide the information for sending class notice. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). The Supreme Court similarly has directed that defendants should provide names and addresses of class members in collective action cases. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). The names should be supplied promptly in an electronic format so that notice is most easily accomplished.

Plaintiffs request that the Court to order Defendants to provide Plaintiffs' counsel with putative class members' names, last known addresses, telephone numbers, dates of birth, and any employee number or unique identifier,[9] and the last four digits of each putative class members' social security number in order to assist with the issuance of the notice. Telephone numbers, dates of birth, and partial social security numbers can assist with locating workers whose notices are returned for invalid addresses. This additional information to facilitate notice is routinely ordered to be produced in FLSA collective actions. *See Davis v. Abercrombie & Fitch Co.*, 2008 WL 4702840, *12 (S.D.N.Y. 2008); *Lynch v. United Services Auto. Ass'n*, 491 F.Supp.2d 357, 371-72 (S.D.N.Y. 2007).

## IV.    PLAINTIFF'S PROPOSED NOTICE SHOULD BE MAILED AND POSTED.

Plaintiff asks the court to authorize Plaintiff to disseminate the Notice by: (1) sending it by mail to class members last known addresses, with permission to remail if the notice is returned as undeliverable, 2) sending it also by e-mail to workers for whom Defendant can provide e-mail addresses, and (3) requiring Defendant to post the notice on the employee notice board or alternatively in a prominent location within the dispatch office where current class members start and end their shifts.

---

[9] Unique identifiers are used to maintain database integrity in producing payroll. Providing the company's unique identifiers will allow Plaintiffs to synch the resulting database of clients with the Defendants' databases for determining merits and damages issues. Without this ability to synch, for example, it will be unknown whether the Robert Doe in a given record refers to Robert Doe Jr, Robert Doe, Sr. Rob Doe, Robs Don, etc. Unique identifiers remove many of the database management issues that make handling a case of this type more complex and time consuming than necessary.

23

Mailing of notice is the best notice practicable, and that is the routine method for delivering notice. However, this means is not foolproof, particularly with a low income or otherwise mobile class with a period extending over many years. Thus, posting of notice by Defendants where it can be seen by current workers who may also have worked in prior years contributes to dissemination among similarly situated employees. District courts around the country have recognized posting (in addition to mailing) as an efficient, non-burdensome method of notice that courts regularly employ. *See Sherrill v. Sutherland Global Servs. Inc.,* 487 F.Supp.2d 344, 351 (W.D.N.Y. 2007) (allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members); *Castillo v. P & R Enterprises, Inc.,* 517 F.Supp.2d 440, 449 (D.D.C. 2007) (ordering notice posted in '(1) Defendant's offices, or (2) office spaces designated for Defendant's use in third-party buildings"); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) (finding that posting of notice in workplace and mailing is appropriate and not punitive); *Veliz v. Cintas,* 2004 WL 2623909 at *2 (N.D. Cal. 2004) (citing court order to post notice in all workplaces where similarly situated persons are employed); *Garza v. Chicago Transit Authority,* No. 00 C 0438, 2001 WL 503036 *4 (N.D. Ill. May 8, 2001)(ordering defendant to post notice in all of its terminals); *Johnson v. American Airlines,* 531 F.Supp. 957, 961 (S.D. Tex. 1982) (finding that sending notice by mail, "posting on company bulletin boards at flight bases and publishing the notice without comment in American's The Flight Deck, are both reasonable and in accordance with prior authority"); *Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 679 (S.D.N.Y. 1981) (requiring defendant to "permit the posting of copies of public bulletin boards at FP offices"); *Soler v. G&U, Inc.,* 86 F.R.D. 524, 532-532 (S.D.N.Y. 1980) (authorizing plaintiffs to "post and mail the proposed notice of pendency of action and consent to sue forms").

Sending notice by e-mail is commonly used especially where it can be expected that problems exist with mail notice. *See, e.g., McKinzie v. Westlake Hardware, Inc*., No. 09-0796-CV-W-FJG, 2010 WL 2426310 *5 (W.D.Mo. June 11, 2010)(ordering defendant to provide telephone numbers and e-mail addresses of class members); *Kress v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 632 (E.D. Ca. 2009); *Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124, 1128 (N.D. Ca. 2009); *Beall v. Tyler Technologies, Inc.,* cv 2-08-CV-422 (TJW), 2009 WL 3064689 at *2 (E.D. Tex. Sept. 23, 2009).

A copy of the notice Plaintiffs propose to mail, email, and post to class members is attached to this motion as Exhibit 1. This notice informs class members in neutral language of the nature of the action, of their right to assert FLSA claims by filing a consent to sue form with the Court, and the consequences of their joining or not joining the action. The form of this notice is based on the format recommended by the Federal Judicial Center.

## **CONCLUSION**

For all of the foregoing reasons, this Court should enter an Order: (1) certifying this action as a class action and appointing the undersigned as class counsel, (2) conditionally certifying this action as an FLSA collective action for the class as defined in the amended complaint; (3) requiring Defendants to provide Plaintiff, in electronically readable form, the names, dates of birth, job dates, addresses, telephone numbers, e-mail addresses, last four digits of their social security numbers and any unique identifiers used for the class members; (4) authorizing Plaintiff to issue the notice attached as Ex. 1 by mail, and e-mail, and requiring Defendant to post the notice in a conspicuous place in its offices where Plaintiffs are employed; (5) giving the members of the class sixty days from the date that notice issued to opt-into this action; and (6) appointing the undersigned counsel as class counsel.

Date: August 29, 2011

Respectfully Submitted,

  */s/ Dan Getman*
Dan Getman (DG 4613)
Carol Richman (on the brief)(CR1256)
Getman Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

*Counsel for Plaintiffs*

26