FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JAN 19 2012  ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**MEMORANDUM & ORDER**

**11-CV-442**

**ALFRED LEWIS, et al.,**

**Plaintiffs,**

– against –

**ALERT AMBULETTE SERVICE CORP., ET AL.,**

**Defendants.**

**Appearances:**

For Plaintiffs:    Carol P Richman
                   Getman Sweeney, PLLC
                   9 Paradies Lane
                   New Paltz, NY 12561

                   Dan Charles Getman
                   Getman & Sweeney, PLLC
                   9 Paradies Lane
                   New Paltz, NY 12561

For Defendants:    Raymond Nardo
                   Attorney at Law
                   129 Third Street
                   Mineola, NY 11501

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    Introduction ................................................................................ 2

II.   Facts ........................................................................................... 3

   A.   Named Parties ........................................................................ 3

   B.   Defendants' Alleged Employment Practices ............................ 5

   C.   Proposed Classes .................................................................... 6

III.  Plaintiff's Claims ....................................................................... 8

A.    Claims Under the Fair Labor Standards Act ........................................................ 8
B.    New York State Claims ................................................................................................. 9
    1.  Minimum Wage ................................................................................................. 10
    2.  Spread of Hours ................................................................................................ 10
    3.  Overtime ............................................................................................................ 10
    4.  Deductions ......................................................................................................... 11
IV.   Defenses ................................................................................................................... 12
V.    FLSA Collective Action ......................................................................................... 13
VI.   Rule 23 Class Action .............................................................................................. 16
  A.    Rule 23(a) Factors ........................................................................................... 17
    1.  Numerosity ......................................................................................................... 17
    2.  Commonality ...................................................................................................... 18
    3.  Typicality ........................................................................................................... 22
    4.  Adequacy of Representation ............................................................................ 23
  B.    Rule 23(b)(3) Factors ...................................................................................... 24
    1.  Predominance .................................................................................................... 24
    2.  Superiority ......................................................................................................... 28
  C.    Class Counsel .................................................................................................... 29
VII.  Hearing and Posting .............................................................................................. 30
VIII.  Conclusion .............................................................................................................. 31
IX.   Appendix A: Consent Order ................................................................................. 32
X.    Appendix B: Class Notice ..................................................................................... 35

# I.    Introduction

Plaintiffs are ambulette drivers who transport defendants' customers to and from medical appointments throughout the five boroughs of New York City. They bring this action against their former employers claiming violations of both the Fair Labor Standards Act (FLSA), Pub. L. No. 75-718, ch. 676, 52 Stat. 1060 (codified at 29 U.S.C. §§ 201-219), and New York law, N.Y.

Labor. L. §§ 193, 198-b; N.Y. Comp. Codes & Regs. tit. 12, §§ 142-1.1, 142-2.1, 142-2.4(a).

Alleged is that defendants have engaged in a number of unfair labor practices, including:

refusing to pay time and a half when drivers work more than forty hours; failing to pay the

minimum wage; withholding and deducting wages for impermissible reasons; and refusing to

pay drivers who work twelve-hour shifts an additional hour of pay under New York's spread of

hours requirement.  Plaintiffs seek unpaid wages, liquidated damages, interest, costs, and

attorneys' fees, as well as declaratory relief.

Sought is certification of an opt-in class of ambulette drivers for the purposes of a

collective action under the FLSA.  *See* 29 U.S.C. § 216(b).  They also seek to have certified an

opt-out class under Federal Rule of Civil Procedure 23(b)(3) for their New York state overtime,

minimum wage, spread of hours, and deductions claims.  Defendants have consented to the

certification of plaintiffs' proposed collective and class action.  *See* Tr. of Hr'g on Class &

Collective Action Certification, Jan. 11, 2012; Proposed Consent Order, Doc. Entry 30, Dec. 30,

2011.  The court conferred with counsel on the record, investigated the law and facts, and

approved the procedures now followed.  *See* Tr. of Hr'g on Class & Collective Action

Certification, Jan. 11, 2012.

For the reasons set forth below, plaintiffs' motion is granted.

## II.     Facts

### A.     Named Parties

Defendant Alert Ambulette Service Corp. ("Alert Ambulette") is a private corporation

headquartered in Brooklyn, NY.  It employs drivers to transport customers to and from medical

3

appointments throughout the five boroughs of New York City using its fleet of vehicles. The company is owned by defendant Mark Hanukov; plaintiffs allege that he is personally involved in all issues regarding drivers' scheduling and pay. Compl. ¶ 29, Doc. Entry 1, Jan. 28, 2011. Plaintiffs claim that drivers were paid part of their salaries out of defendant Jacob Hanukov Bus Services' receipts. Tr. of Hr'g on Class & Collective Action Certification, Jan. 11, 2012.

Plaintiffs Alfred Lewis, Matthew Lovell, Ricardo Lecky, Herman Antly, and Makanda Forrester are defendants' former employees. Antley worked for Alert Ambulette from March or April 2006 to March or April 2007, Antley Dec. ¶¶ 2-3, Pls.' Mot. to Certify Class and Collective Action, Doc. Entry 19, Aug. 29, 2011 ("Antley Dec."); Forrester from approximately December 2003 until September 2009, Forrester Dec. ¶¶ 2-3, Pls.' Mot. to Certify Class and Collective Action, Doc. Entry 19, Aug. 29, 2011 ("Forrester Dec."); Lewis from approximately May 2006 until November 2010; Lewis Dec. ¶¶ 2-3, Pls.' Mot. to Certify Class and Collective Action, Doc. Entry 19, Aug. 29, 2011 ("Lewis Dec."); Lovell from approximately November 2005 until March 2009, Lovell Dec. ¶¶ 2-3, Pls.' Mot. to Certify Class and Collective Action, Doc. Entry 19, Aug. 29, 2011 ("Lovell Dec."); and Lecky from approximately August 2006 to January 2007, Lecky Dec. ¶¶ 2-3, Pls.' Mot. to Certify Class and Collective Action, Doc. Entry 19, Aug. 29, 2011 ("Lecky Dec.").

Because the dates of his employment are beyond the statute of limitations for FLSA claims, Lecky only brings state law claims on behalf of himself and other class members.

4

## B.    Defendants' Alleged Employment Practices

Plaintiffs claim that defendants have a policy of underpaying their employees in violation of state and federal law.  Their allegations are as follows:

When plaintiffs began working at Alert Ambulette, defendants allegedly deducted a portion of their wages.  They were told that these deductions would be used to cover any future damages to the vehicle they drove; to pay for future parking or traffic tickets; and to guarantee that they gave proper notice if they left the company.  *See* Antley Dec. ¶ 20; Forrester Dec. ¶ 22; Lecky Dec. ¶ 19; Lewis Dec. ¶ 18; Lovell Dec. ¶ 20.

At Alert Ambulette, plaintiffs worked a daily shift of twelve hours.  *See* Antley Dec. ¶ 8; Forrester Dec. ¶ 9; Lecky Dec. ¶ 8; Lewis Dec. ¶ 8; Lovell Dec. ¶ 8; Tayyabkhan Dec. ¶ 7, Pls.' Mot. to Certify Class and Collective Action, Doc. Entry 21, Aug. 29, 2011 ("Tayyabkhan Dec.").  They were paid a flat rate of between $350 to $500 for five days.  Antley Dec. ¶ 12; Forrester Dec. ¶ 13; Lecky Dec. ¶ 12; Lewis Dec. ¶ 12; Lovell Dec. ¶ 12; Tayyabkhan Dec. ¶ 11.

Plaintiffs occasionally worked a sixth day per week, usually on Saturday.  The daily rate for the sixth day was between $75.00 to $110.00, depending on the length of the day.  The shift could be as long as fourteen hours.  Antley Dec. ¶ 15; Forrester Dec. ¶ 15; Lecky Dec. ¶ 15; Lovell Dec. ¶ 15; Tayyabkhan Dec. Ex. C, D.

Although drivers' start and end times were more than ten hours apart, drivers did not receive an additional hour of pay as required by New York's spread of hours requirement, detailed in Part III(B)(2), *infra*.  Antley Dec. ¶¶ 25-26; Forrester Dec. ¶¶ 29-30; Lecky Dec. ¶¶ 23-24; Lewis Dec. ¶¶ 21-22; Lovell Dec. ¶¶ 24-25.

When a driver worked more than twelve hours, he was usually paid an additional hourly rate. Antley Dec. ¶ 14; Lecky Dec. ¶ 14; Lovell Dec. ¶¶ 9, 14; Tayyabkhan Dec. ¶ 11(c), Ex. C. If a driver was late for his shift—even by a few minutes—defendants docked his pay. Antley Dec. ¶ 16; Forrester Dec. ¶ 18; Lewis Dec. ¶ 14; Lovell Dec. ¶ 16; Tayyabkhan Dec. ¶ 11(c), Ex. C.

Defendants made additional deductions from drivers' wages. If a driver received a parking ticket while on the job—including tickets that resulted from necessary drop-off or pickup of passengers in front of medical facilities—the amount of the ticket was deducted from his pay. *See* Antley Dec. ¶ 21; Forrester Dec. ¶ 23; Lecky Dec. ¶ 20; Lovell Dec. ¶ 21.

Plaintiffs were paid in cash. *See* Antley Dec. ¶ 17; Forrester Dec. ¶ 19; Lecky Dec. ¶ 16; Lewis Dec. ¶ 15; Lovell Dec. ¶ 17. They also received paystubs or W2 forms which understated the amount that they were paid. Antley Dec. ¶ 19; Forrester Dec. ¶ 20; Lecky Dec. ¶ 18; Lewis Dec. ¶ 17; Lovell Dec. ¶ 19.

### C.   Proposed Classes

Plaintiffs propose to have certified a collective action for failure to pay overtime wages in violation of the FLSA. 28 U.S.C. § 216(b). The proposed class would include all drivers for Alert Ambulette within the three years preceding the issuance of the class notice up through the date of final judgment. This is the class of all employees whose potential FLSA claims are not barred by the statute of limitations. *See* 29 U.S.C. § 255(a) (stating that the cause of action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that

6

a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued").

Plaintiffs also seek to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure for defendants' violations of New York state law: failure to pay them a minimum wage, improper deductions and withholding, and refusal to provide spread of hours pay.  The proposed class would include all drivers for Alert Ambulette within the six years preceding the filing of the initial complaint up through the date of final judgment.  As with the FLSA class, the Rule 23 class includes all employees whose claims are not time-barred.  *See* N.Y. Labor L. § 663(3) ("Notwithstanding any other provision of law, an action to recover upon liability imposed by this article must be commenced within six years.").

Both classes would be subject to any equitable tolling for any applicable period preceding the limitations period.  Excluded from the class would be any of defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time in the class period has had, a controlling interest in any defendants; the judge and any immediate family; and all persons who will timely and properly submit their requests for exclusion from the class.

Plaintiffs allege, based on their analysis of defendants pay records, that the potential class would include over 100 drivers.  *See* Tayyabkhan Dec. ¶¶ 15-16.

7

### III.   Plaintiff's Claims

### A.   Claims Under the Fair Labor Standards Act

Under the FLSA, covered non-exempt workers engaged in commerce or in the

production of goods for commerce, or who are employed by an enterprise engaged in commerce

or in the production of goods for commerce, are entitled to a federal minimum wage of not less

than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Employers are required to "pay a premium

or overtime wage of not less than one and one-half times the regular rate for hours worked in

excess of forty hours in a single work-week if an employee either: 1) is engaged in commerce or

in the production of goods for commerce, or 2) is employed in an enterprise engaged in

commerce or in the production of goods for commerce." *Jacobs v. N.Y. Foundling Hosp.*, 577

F.3d 93, 96 (2d Cir. 2009) (per curiam) (internal quotation marks and emphasis omitted); *see* 29

U.S.C. § 207(a)(1).

The FLSA defines "commerce" to mean "trade, commerce, transportation, transmission,

or communication among the several States or between any State and any place outside thereof."

29 U.S.C. § 203(b). It provides that an "employee shall be deemed to have engaged in the

production of goods if such employee was employed in producing, manufacturing, mining,

handling, transporting, or in any other manner working on such goods, or in any closely related

process or occupation directly essential to the production thereof, in any State." 29 U.S.C. §

203(j).

An entity constitutes an enterprise where "the related activities performed (either through

unified operation or common control) by any person or persons [are] for a common business

8

purpose." 29 U.S.C. § 203(r); *see also Rodriguez v. Almighty Cleaning*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011). An enterprise is "engaged in commerce or in the production of goods for commerce" if, 1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" *and* (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

To establish an employer's liability under the FLSA for unpaid overtime, a plaintiff must prove: 1) that he performed work for which he was not properly compensated; and 2) that the employer had actual or constructive knowledge of that work. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87 (1946); *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 287 (2d Cir. 2008); *Grochowski v. Phoenix Constr.,* 318 F.3d 80, 87 (2d Cir. 2003).

The FLSA enumerates certain categories of employees who are "exempt" from the overtime and minimum wage requirements. 29 U.S.C. § 213. It also provides that an employer is not liable for its failure to pay overtime if the decision not to pay such wages was made "in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Department of Labor. 29 U.S.C. § 259(a).

**B.    New York State Claims**

New York law empowers the Commissioner of Labor to investigate the sufficiency of the minimum wage and to appoint a wage board to report and recommend adequate minimum wages and overtime rates. *See* N.Y. Labor L. § 653; *id.* § 655(5)(b). Acting under this authority, the

Commissioner has promulgated regulations governing overtime, minimum wage, spread of hours, and deductions—regulations which defendants are alleged to have violated. Employees are permitted to sue their employers for underpayment of wages, as defined by these statutes. N.Y. Labor L. § 663(1).

### 1. Minimum Wage

New York law requires that employers pay full-time employees a minimum wage. N.Y. Comp. Codes & Regs. tit. 12, § 142-2.1(a) (specifying the minimum wage). An employee is considered full-time if he works more than thirty hours per week. *Id.* § 142-2.1(c). For the purposes of payroll, "the minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee." *Id.* § 142-2.1(d).

### 2. Spread of Hours

If the spread of hours the employee works exceeds ten hours, he is entitled to receive an additional hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage. *Id.* §142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday"; it includes "working time plus time off for meals plus intervals off duty." *Id.* § 137-3.11.

### 3. Overtime

New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations. *See* N.Y.C.R.R. tit. 12, §142-2.2 ("An employer shall pay an employee for

10

overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et. seq., the Fair Labor Standards Act of 1938 provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such act, overtime at a wage rate of one and one-half times the basic minimum hourly rate."). As such, the same elements are required to prove plaintiffs' claim under New York labor law as under federal law.

### 4.    Deductions

New York law limits what employers can deduct or withhold from employee wages. *See* N.Y. Labor L. § 193. It permits employers to consider meals and lodging furnished by the employer, as well as tips, part of the minimum wage. N.Y. Labor L. § 193(a) ("No employer shall make any deduction from the wages of an employee, except deductions which . . . are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ."); N.Y.C.R.R. tit. 12, §142-2.5. It also permits employers to make deductions "for the benefit of the employee" if they are "expressly authorized in writing by the employee"; these deductions "shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee." N.Y. Labor L. § 193(b). Employers may make no other deductions or

withholdings except those authorized or required by law, such as for social security and income tax. N.Y. Labor L. § 193(c); N.Y.C.R.R. tit. 12, §142-2.10.

Employers are thus forbidden from making "deductions for spoilage or breakage; . . . deductions for cash shortages or losses; [or imposing] fines or penalties for lateness, misconduct or quitting by an employee without notice." N.Y.C.R.R. tit. 12, §142-2.10(a). They may not reduce the minimum wage for "expenses incurred by an employee in carrying out duties assigned by an employer." *Id.* §142-2.10(b). Nor may employers deduct the value of tools belonging to the employer and used by employees in the course of his employment and which are lost by an employee. N.Y. Atty. Gen. Op. No. 1946-200.

## IV.  Defenses

In its answer, the defendants have raised several affirmative defenses to plaintiffs' substantive claims, including, among others:

1.  The relevant statutes do not apply to the defendants for various reasons, including that they do not have sufficient revenues to qualify as an employer under the FLSA, *id.* ¶ 69; that they are not engaged in interstate commerce, *id.* ¶ 75, or the production of goods for commerce, *id.* ¶ 76; and that they are exempt from the FLSA, *id.* ¶ 88, and New York Labor Law, *id.* ¶ 89;

2.  Plaintiffs' have unclean hands, *id.* ¶ 69;

3.  The damages were not "willful" under the FLSA or New York Labor Law, *id.* ¶¶ 70-71;

12

4. Plaintiffs are not entitled to spread of hours pay, *id.* ¶ 80, or any additional wages, *id.* ¶ 87, and have failed to state a cause of action, *id.* ¶ 67;

5. Plaintiffs are not entitled to relief because they mitigated damages by finding other jobs, *id.* ¶ 74; and

6. The statute of limitations bars the action, *id.* ¶ 77.

Defendant stated at the hearing on January 11, 2012 that all of its defenses will apply equally to all potential class members. Tr. of Hr'g on Class & Collective Action Certification, Jan. 11, 2012.

Defendant initially raised several defenses against certification of a potential class action. *See id.* ¶¶ 78-79, 81-84. As defendants have since consented to certification of the class action in this case, these defenses are waived.

## V.  FLSA Collective Action

Section 216(b) of the FLSA permits employees to bring an action "to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, *see infra* Part V, a FLSA class action requires potential employee-plaintiffs to affirmatively opt-in by giving consent in writing to become a party to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010); *Karic v. Major Automotive*

13

*Companies, Inc.*, 2011 WL 3235703, at *2 (E.D.N.Y. July 20, 2011) (internal quotations and citations omitted).  The certification standard under section 216(b) is thus "considerably less stringent" than the requirements for class certification under Rule 23.  *Avila v. Northport Car Wash, Inc.*, No. 10 CV 2211, 2011 WL 833642, at *3 (E.D.N.Y. Mar. 10, 2011) (quoting *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001)).

In order to certify a FLSA collective action, the court must find that the employees in the class are "similarly situated."

> Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative class are similarly situated, district courts in this circuit look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class."

*Laroque v. Domino's Pizza, LLC,* 557 F. Supp. 2d 346, 351 (E.D.N.Y. 2008) (quoting *Guzman v. VLM, Inc.,* No. 07 CV 1126, 2007 WL 2994278 at *3 (E.D.N.Y. Oct. 11, 2007)).

Certification of a FLSA collective action generally proceeds in two steps.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).  First, it must be determined, based on the pleadings and any accompanying affidavits, whether the employees in the class appear to be similarly situated.  To meet this burden, "plaintiffs need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Doucoure v. Matlyn Food, Inc.,* 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal citations and quotations omitted); *see also Myers*, 624 F.3d at 555.  If plaintiffs meet this "fairly lenient standard," conditional certification is typically granted and notice to potential plaintiffs authorized.  *See Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363,

14

367 (S.D.N.Y. 2007). This initial determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiffs. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 130 (E.D.N.Y. 2011).

Second, after the completion of discovery, the court makes factual findings regarding whether the plaintiffs who have opted in are actually similarly situated to the named plaintiffs. *Myers*, 624 F.3d at 555; *see also Avila v. Northport Car Wash, Inc.*, 2011 WL 833642, at *2. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

It is sufficient for conditional certification that plaintiffs attest to knowledge of similarly situated co-workers or complain of a company-wide policy. In *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011), the court conditionally certified a FLSA class on the basis of affidavits from two sanitation workers which indicated that they were not paid overtime wages and identified co-workers that were similarly situated. Similarly, in *Guzman v. VLM, Inc.*, the court conditionally certified a FLSA class where four bakery employees had complained of a "companywide policy of failure to pay overtime wages and alleging that many other employees who performed similar duties complained of the exact same policy, and have supported their affidavits with suggestive pay stubs for three of them." 2007 WL 2994278, at *3; *see also Rodriguez*, 784 F. Supp. 2d at 130-31 (certifying FLSA class where named plaintiffs submitted affidavits identifying persons that were employed with the same job duties and subject to the same wage policies); *Avila*, 774 F. Supp. 2d at 454-55 (certifying FLSA class of car wash

15

employees based on affidavits identifying themselves and others as subject to same wage policy which failed to compensate them for overtime).

Plaintiffs allege that defendants have a common practice of violating the FLSA's minimum wage and overtime payment requirements. Defendants do not dispute that plaintiffs are similarly situated to absent class members and have consented to certification of a FLSA collective action. Because certification of a collective action under the FLSA does not impair the due process rights of absent class members, further inquiry is not required.

In light of the above facts, plaintiffs have met the "fairly lenient standard" required for conditional FLSA certification.

## VI. Rule 23 Class Action

In order for a class action to be certified under Rule 23, it must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. Rule 23(a). In addition, where the proposed class relief is predominantly money damages, the court must consider whether a class action is superior to alternative methods of adjudication. Fed. R. Civ. P. Rule 23(b)(3).

The requirements for Rule 23 class certification must be established by a preponderance of the evidence, *Myers*, 624 F.3d at 547, and a district court must undertake a "rigorous analysis" in order to determine whether each of these Rule 23 requirements are met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011); *Heerwagen v. Clear Channel Communications,* 435 F.3d 219, 225 (2d Cir. 2006). To do so, any factual disputes relevant to each Rule 23 requirement must be resolved, and any underlying facts relevant to a particular Rule 23 requirement must be

established. *In re Initial Public Offerings Securities Litigation,* 471 F.3d 24, 41 (2d Cir. 2006). This duty is not abrogated even if the class certification issues overlap with the merits of the case. *Id.; see also Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551-52. A class may not be certified unless all of the Rule 23 requirements are met. *In re Initial Public Offerings Securities Litigation,* 471 F.3d at 40.

"Where a collective action under the FLSA . . . is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006); *see also Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2011 WL 6287932, at *3 (E.D.N.Y. 2011); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.").

### A.  Rule 23(a) Factors

#### 1.  Numerosity

The proposed class may only be certified if members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1) ("One or more members of a class may sue ... as representative parties on behalf of all members only if ... the class [and subclass are] so numerous that joinder of all members is impracticable."). There is no bright line rule for when a group is so numerous that joinder is impracticable.

Impracticability does not mean impossibility of joinder, but difficulty of joinder:

Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Relevant considerations include judicial economy

17

> arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

*Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Precise quantification of class members is not necessary, so long as plaintiffs reasonably estimate the number to be substantial. *See id.* at 935; *McNeil v. New York City Hous. Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989). The Court of Appeals for the Second Circuit has held that a prospective class of forty or more raises a presumption of numerosity. *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Rodolico*, 199 F.R.D. at 473; *see also Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 333 (S.D.N.Y. 2009) (certifying class of eighty employees during three year period for unpaid overtime wages); *Toure v. Cent. Parking Sys.*, 2007 WL 2872455 at *6 (S.D.N.Y. Sept. 28, 2007) (certifying a class of forty-six members).

The proposed class is sufficiently numerous to be certified. Plaintiffs' analysis of the payroll records supplied by the defendants indicates that there are at least 100 potential class members. Tayyabkhan Dec. ¶¶ 15-16. At the hearing, plaintiffs' counsel indicated that he had identified 126 class members. Because there are more than forty class members, numerosity is presumed.

### 2. Commonality

In order to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In its recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), the Supreme Court clarified its definition of commonality:

18

> What matters to class certification ... is not the raising of common 'questions'—
> even in droves—but, rather the capacity of a classwide proceeding to generate
> common *answers* apt to drive the resolution of the litigation. Dissimilarities
> within the proposed class are what have the potential to impede the generation of
> common answers.

*Id.* at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

N.Y.U. L. Rev. 97, 132 (2009)). In order for certification to be proper, class claims must

"depend upon a common contention . . . of such a nature that it is capable of classwide

resolution." *Id.*

"Commonality does not mean that all issues must be identical as to each member, but it

does require that plaintiffs identify some unifying thread among the members' claims that

warrant[s] class treatment." *Garcia,* 2011 WL 6287932, at *4 (quoting *Damassia,* 250 F.R.D. at

156). Even a single common question is sufficient to meet the commonality requirement. *Wal-

mart Stores, Inc.,* 131 S.Ct. at 2556. The need for an individualized determination of damages

generally does not defeat the requirement. *E.g. Garcia,* 2011 WL 6287932, at *4.

Where the question of law involves "standardized conduct of the defendant ... [to the

plaintiff], a common nucleus of operative fact is typically presented and the commonality

requirement ... is usually met." *E.g. D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451,

456 (E.D.N.Y. 1996). In wage cases, the commonality requirement is usually satisfied where the

plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.

*E.g. Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential

class members are alleged to have been harmed by a common practice—defendants' failure to

adequately compensate employees for overtime hours. The legal theory set forth in Noble's

Complaint is common to all class members—that this alleged failure to pay overtime violates New York's labor law. Accordingly, the commonality requirement is satisfied.").

This case presents several common questions that are susceptible to common answers. Plaintiffs allege that all drivers "have been subjected to common contract terms and a policy and pattern or practice of failing to pay overtime, minimum wages, and spread of hours pay." Compl. ¶ 23; *see also id.* ¶ 26 (alleging that plaintiffs have been harmed as a result of defendants' "common and uniform policies, practices, and procedures"). The following questions of law and fact are thus common to the class:

    a.  whether Defendants failed to pay New York class Plaintiffs state statutory minimum wages in each week of work;

    b.  whether Defendants failed to pay New York class Plaintiffs state statutory overtime wages in each week of work;

    c.  whether Defendants failed to pay New York class Plaintiffs state spread of hours wages due for each day's labor with a spread of hours greater than ten;

    d.  whether Defendants wrongfully failed to pay each class member for all their hours of work;

    e.  whether Defendants made unlawful deductions from New York class Plaintiffs' pay; and

    f.  the nature and extent of Class-wide injury and the appropriate measure of damages for the Classes.

Compl. ¶ 22. Plaintiff intends to prove its case through defendants' payroll records, which equally cover all class members. Tr. of Hr'g on Class & Collective Action Certification, Jan. 11, 2012. All claims will be determined under New York law—the only state law applicable.

20

The evidence indicates that the plaintiffs may be found to have been subject to a uniform policy of unlawful labor practices.  Plaintiffs have identified themselves and potential class members as drivers for defendant with similar job duties. Antley Dec. ¶ 6; Forrester Dec. ¶ 7; Lecky Dec. ¶ 6; Lewis Dec. ¶ 6.  Each named plaintiff has also identified the same allegedly illegal wage practices of defendant, including failure to pay overtime wages, Antley Dec. ¶¶ 8-19; Forrester Dec. ¶¶ 9-21; Lecky Dec. ¶¶ 8-18; Lewis Dec. ¶¶ 8-17, and use of allegedly illegal deductions, Antley Dec. ¶¶ 20-22; Forrester Dec. ¶¶ 22-26; Lecky Dec. ¶¶ 19-21; Lewis Dec. ¶¶ 18-20.  Plaintiffs have supported their affidavits with timesheets indicating that both the named plaintiffs and potential opt-in plaintiffs worked approximately twelve-hour days, Tayyabkhan Dec. Ex. A (timesheets of defendant's employees); *id.* Ex. D. (Timesheet including week ending July 28, 2010); records of plaintiffs' and potential opt-in plaintiffs' wages, Tayyabkhan Dec. Ex. B (weekly record of pay); Ex. C (Excerpted Weekly Record of Pay); and payroll documents outlining the deductions to which plaintiffs and others similarly-situated drivers were subject, Tayyabkhan Dec. Ex. G (payroll).  Defendants have conceded that there are sufficient common questions.  Tr. of Hr'g on Class & Collective Action Certification, Jan. 11, 2012.  As such, liability can be determined on a classwide basis.

There is sufficient proof for certification purposes of a uniform policy of underpayment and unlawful deductions, presenting a common question that is subject to classwide proof.  While damages owed to each driver will require individual determinations, this computation issue is not enough to destroy commonality.

21

### 3.    Typicality

The claims of the named plaintiffs must be typical of the claims of the class they seek to represent.  Fed. R. Civ. P. 23(a)(3).  The crux of the requirement is that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *Falcon*, 457 U.S. at 157 n. 13).  The requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1982) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974)).  "Minor variations in the fact patterns" of named plaintiffs and putative class members do not prevent a finding of typicality. *Robidoux*, 987 F.2d at 936.

All potential class members are current or prior employee drivers of defendant and all are can be found to have been subject to a common policy or practice of paying illegal wages. Plaintiffs were allegedly subject to the same twelve-hour shifts without overtime wages, and to the same performance-guarantee deductions and deductions for work-related parking tickets and uniforms. *See, e.g.,* Lewis Dec. ¶¶ 18-20.  The named plaintiffs' claims do not appear to diverge from those of the potential class and defendants have not indicated they will raise any defenses that will be unique to these plaintiffs.

For purposes of 23(a), plaintiffs' claims are typical of the class.

### 4.    Adequacy of Representation

Named plaintiffs must fairly and adequately represent the interests of the class.  Fed. R.

Civ. P. 23(a)(4).  Representatives must have no interests conflicting with the class or subclass.

*See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).  "The question of whether the named plaintiffs can

fairly and adequately represent the class is one committed to the sound discretion of the district

court."  *Cty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989)

(internal quotation omitted).

Only a fundamental conflict will defeat the adequacy of representation requirement.

*Schwab v. Philip Morris*, 449 F. Supp. 2d 992, 1107 (E.D.N.Y. 2006), *rev'd on other grounds*

*sub nom. McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *see also In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).  Inquiry into adequacy

"serves to uncover conflicts of interest between named parties and the class they seek to

represent.  A class representative must be part of the class and possess the same interest and

suffer the same injury as the class members."  *Amchem*, 521 U.S. at 625-26.

Representative plaintiffs are only required to know enough about the case to "serve the

interests of the class and ensure that they are not simply lending their names to a suit controlled

entirely by the attorneys for the benefit of counsel."  *Schwab*, 449 F. Supp. 2d at 1108; *see also*

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000); *In re Zyprexa*

*Product Liability Litigation*, 2008 WL 4097408, at *145-46 (E.D.N.Y. Sept. 5, 2008); *In re*

*Frontier Ins. Group Secs. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997).  Other factors that have been

considered in determining the adequacy of representation include the named plaintiffs'

23

"knowledge of the case" and "credibility." *In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996).

There is no evidence that named plaintiffs' interests are not closely aligned with those of prospective class members. Since named plaintiffs allege a common practice or policy of unlawful labor practices, their claims will require similar legal and factual proof to those of absent class members. As discussed in Part VI(C), plaintiffs' counsel is an experienced litigator who has handled many similar suits in the past.

Absent class members will be adequately represented by the named plaintiffs.

**B.  Rule 23(b)(3) Factors**

**1.  Predominance**

The predominance requirement is a more demanding version of the commonality requirement of Rule 23(a). *See Amchem*, 521 U.S. at 623-624. The purpose of the "predominance" requirement of Rule 23(b)(3) is to ensure that trying the case as a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615; *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). The requirement thus "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v.*

24

*PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.").

When determining whether common questions predominate, courts focus on whether questions of liability are common to the class members. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139. Even when there are individualized damage questions, certification may still be proper where liability can be determined on a class-wide basis. *See id.*; *see also Guzman*, 2007 WL 2994278 at *8.

In some wage cases, courts have refused to certify class actions where the particular claims and legal theories advanced would require an extensive inquiry into the facts and circumstances of an individual's employment. In *Alix v. Wal-Mart Stores, Inc.*, for example, plaintiffs sought to certify a class of all hourly Wal-Mart employees in the state, alleging supervisory personnel "implement[ed] a corporate-wide policy that systematically deprived many of its employees of proper compensation through the manipulation of time records and the implementation of employment practices designed to compel employees to work off the clock without compensation." 868 N.Y.S.2d 372, 374 (3d Dep't 2008). The New York State Appellate Division for the Third Department, applying a similar state law class certification standard, upheld the trial court's finding that common issues did not predominate. *Id.* at 376. According to the trial court:

> In order to establish entitlement to relief, not to mention proper apportionment of damages, plaintiffs must adduce specific evidence as to which associates worked "off the clock," on what occasions, and for how long. Moreover, plaintiffs must also demonstrate that defendant either knew or had reason to know that its

25

> employees were thus engaged . . . . Absent such proof, plaintiffs will not have
> established a prima facie case of violations of the Labor Law.

838 N.Y.S.2d 885, 893-94 (Albany Cty. Sup. Ct. 2007). The affidavits of the two named

plaintiffs showed that "the facts and circumstances surrounding the allegedly unpaid work vary

substantially from associate to associate." *Id.* at 895. Establishing defendant's liability would

require an examination of each employee's time cards and the corporate pay roll records, as well

as testimony as to specific circumstances under which entries were made. 868 N.Y.S.2d at 376.

As such, individual questions predominated over common ones.

    Such cases are the exception rather than the rule. In the majority of wage cases, "if

plaintiffs establish that defendant had a practice or policy of failing to pay prevailing wages,

defendant's liability to all class members will be established." *Ramos v. SimplexGrinnell LP*,

796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011). "[N]numerous courts have found that wage claims

are especially suited to class litigation—perhaps the most perfect questions for class treatment—

despite differences in hours worked, wages paid, and wages due." *Id.* In *Ramos*, for example,

the court held that, although "putative class members earned prevailing wages at different rates,

some worked more hours than others, and some are electricians and others are sprinkler fitters . .

. . these differences do not predominate over the main issue: whether defendant systematically

failed to pay its employees the prevailing wages due them." Similarly, in *Alleyne v. Time*

*Moving & Storage Inc.,* the court found that "differences among class members as to the number

of hours worked, the precise work they did and the amount of pay they received concern the

amount of damages to which any individual class member might be entitled, not the amenability

of their claims to Rule 23 certification." 264 F.R.D. 41, 49 (E.D.N.Y. 2010).

26

In this case, predominance is satisfied because "the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees." *Garcia,* 2011 WL 628793, at *6; *see also Aponte v. Comprehensive Health Mgmt Inc.*, No. 10-civ-4825, 2011 WL 2207586 at *11 (S.D.N.Y. June 2, 2011) (holding that common issues predominated where plaintiffs had "introduced sufficient generalized proof that defendant has engaged in a common practice to deny employees"); *Gortat v. Capala Bros. Inc.*, No. 07-civ-3629, 2011 WL 6945186 (E.D.N.Y. Oct. 16, 2009) (certifying class of employees who served different functions and were paid differently because question of whether they were paid for fewer hours than worked predominated); *Bolanos v. Norwegian Cruise Lines, Ltd.*, 212 F.R.D. 144, 148 (S.D.N.Y. 2002) (noting that "a uniform practice or scheme [by defendant] to deprive [its] employees of overtime wages ... [is] a significant step towards establishing liability to all class members").

Although each class member will have different damage claims depending on the length and time of employment, such individualized questions are easily manageable and do not defeat predominance. *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 141 ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.").

27

##### 2.      Superiority

For Rule 23(b)(3) certification to be appropriate, a class action must be the most "fair and

efficient" method of resolving disputes. Under Rule 23(b)(3), courts must consider four non-

exclusive factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D).  The class action device is particularly well-suited in

situations where "plaintiffs are allegedly aggrieved by a single policy of defendants . . . since

many nearly identical litigations can be adjudicated in unison." *In re Nassau*, 461 F.3d at 228

(internal citations and quotations omitted).

In this case, "a class action is superior to other available methods, since that the New

York Labor Law claims are nearly identical to the FLSA claims, which will be tried collectively

in this Court." *Garcia*, 2011 WL 6287932, at *7 (*citing Alonso v. Uncle Jack's Steakhouse, Inc.*,

No. 08 Civ. 7813, 2011 WL 4389636, at *13 (S.D.N.Y. Sept. 21, 2011).  Moreover, "[t]rying this

action collectively 'allows for a more cost-efficient and fair litigation of common disputes' than

requiring each plaintiff to prosecute his or her own individual action." *Id.* (citing *Damassia*, 250

F.R.D. at 164).

It is unlikely that any potential class member has a particular interest in bringing a

separate suit.  The liability issues are common to all class members.  While potential class

members might possibly recover liquidated damages, N.Y. Labor L. § 198, such potential

individual damage awards are not significant enough to indicate that any individual would

"shoulder the burden and cost of [] vast and complex litigation," *Bolanos*, 212 F.R.D. at 158; *see*

*also Noble*, 224 F.R.D. at 346 (noting small claims made individual adjudication unlikely). The

record does not suggest that any separate litigation has been commenced or threatened. Because

defendant is based in Brooklyn, NY and the potential class members all do reside or did reside in

the New York area, resolution by the Eastern District of New York is appropriate. *See Mentor v.*

*Imperial Parking Systems, Inc.*, 246 F.R.D. 178, 187 (S.D.N.Y. 2007) (defendants and plurality

of plaintiffs located in district). Finally, this action is manageable as a class action.

   A class action is superior to individual litigations on these issues.

### C.     Class Counsel

   A court certifying a class must ensure that it will be adequately represented by class

counsel. *See* Fed. R. Civ. P. 23(g). It must consider:

> (i) The work counsel has done in identifying or investigating potential claims in
> the action;
> (ii) Counsel's experience in handling class actions, other complex litigation, and
> the types of claims asserted in the action;
> (iii) Counsel's knowledge of the applicable law; and
> (iv) The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

   The court "may consider any other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The adequacy of

counsel requirement is satisfied "where the class attorneys are experienced in the field or have

29

demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." *Schwab*, 449 F. Supp. 2d at 1106, *rev'd on other grounds sub nom. McLaughlin*, 522 F.3d 215. To determine whether plaintiffs' counsel will fairly and adequately represent the interests of the class and subclass, the court has considered counsel's experience, competence, and effort in this litigation. Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii).

Plaintiffs' counsel has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action. *See* D'Amore Dec. ¶¶ 3-5; Morehead Dec. ¶¶ 3-6. They have invested extensive time, money, and effort in identifying and investigating potential claims in this class action. Fed. R. Civ. P. 23(g)(1)(A)(i). Significant resources have been and continue to be committed to representing the class and subclass and to achieving a practical remedy for class and subclass members. It is highly probably that counsel will continue its efforts to protect the class. Fed. R. Civ. P. 23(g)(1)(A)(iv).

## VII. Hearing and Posting

A hearing was held on January 11, 2012 regarding certification of the proposed class and collective actions. Since the opt-out and opt-in provisions allow each member of the proposed class to fully protect his or her right to prosecute an individual action, there is no need for an additional certification hearing at this time.

The magistrate judge has prepared a consent order for posting and notice. It is signed and attached herewith.

## VIII.   Conclusion

Plaintiffs' proposed class and collective actions are certified.  Defendant concedes that plaintiffs are similarly situated to other employees subjected to defendants' alleged common policy of unlawful labor practices.  These common claims predominate over any individual questions.  Resolution of both federal and state claims on a classwide basis in a single forum is in the interests of justice and will promote judicial economy.

The magistrate judge is respectfully requested to expedite discovery since the payment of wages is involved.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   January 19, 2012
        Brooklyn, New York

31