**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

---

**ALFRED LEWIS, MATTHEW LOVELL, RICARDO LECKY, HERMAN ANTLEY and MAKANDA FORRESTER, individually and behalf of all other similarly situated persons,**

**Plaintiffs,**

**v.**

**ALERT AMBULETTE SERVICE CORP. , MARK HANUKOV, and JACOB HANUKOV BUS SERVICE CORP.**

**Defendants.**

**1:11-cv-00442-JBW -JMA**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

Respectfully submitted on April 5, 2012,

By:   */s/ Dan C. Getman*

Dan C. Getman (DG 4613)
Lesley A. Tse (on the brief)
Getman & Sweeney PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Fax: (845) 255-8649
dgetman@getmansweeney.com

*Attorneys for Plaintiffs*

**Table of Contents**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ................................................................................................................ 3

    DEFENDANT VIOLATED THE FLSA OVERTIME AND MINIMUM WAGE

    PROVISIONS OF THE FLSA ................................................................................ 6

        A.  The FLSA Is a Remedial Statute................................................................ 6

        B.  Defendants Are an Enterprise Engaged in Commerce.................................. 7

        C.  Defendants Violated the Overtime Provisions of the FLSA ........................... 9

        D.  Defendants Violated the Minimum Wage Provisions of the FLSA.............................. 10

        E.  Defendants' Violation of the FLSA Was Willful............................................. 10

        F.  Defendants Are Liable for Liquidated Damages for FLSA Violations ........................ 13

    DEFENDANTS ARE A SINGLE INTEGRATED ENTERPRISE AND/OR JOINTLY

    EMPLOYED THE PLAINTIFFS.............................................................................. 14

        A.  Defendant Hanukov Is an Employer of Plaintiffs' Employer....................................... 14

        B.  Defendants Alert, Bus Company, and Hanukov Are a Single ..................................... 15

        C.  Defendants Jointly Employ Plaintiffs ........................................................... 18

    DEFENDANTS VIOLATED THE NEW YORK LABOR LAW ......................................... 19

        A.  Defendants Violated The Overtime and Minimum Wage Provisions of the N.Y. Labor

        Law .................................................................................................. 19

        B.  Defendants Violated the Anti-Kick Back Provisions of the N.Y. Labor Law ............... 20

        C.  Defendants Violated the Spread of Hours Provisions of the N.Y. Labor Law .............. 21

        D.  Defendants Are Liable for Liquidated Damages for N.Y. Labor Law Violations......... 22

    DAMAGES MAY BE CALCULATED FOR THE CLASS BASED ON REPRESENTATIVE

    DAMAGES CALCULATIONS ................................................................................ 24

CONCLUSION............................................................................................................ 28

## INTRODUCTION

This is a wage and hour case that raises claims under state and federal labor law. Plaintiffs bring this case as a collective action under the Fair Labor Standards Act (FLSA) on behalf of a class of ambulette drivers who transport Defendants' customers to and from medical appointments throughout the five boroughs of New York City. Plaintiffs were not paid time and one half for hours worked over 40 and often not paid minimum wage for all hours worked in a week. Defendants also withheld wages as a performance guarantee and deducted wages for impermissible reasons, including employer expenses such as uniforms and traffic tickets.[1] Plaintiffs generally worked twelve-hour shifts, but Defendants failed to pay an additional hour of pay under New York's spread of hours requirement. Plaintiffs bring their federal overtime and minimum wage claims as a collective action under 29 U.S.C. § 216 (b). Plaintiffs also bring this case as a class action under Fed. R. Civ. P. 23 under New York overtime, minimum wage, spread of hours, and deductions laws. N.Y. Labor Law Art. 6 & 19, including §§ 193 and 198-b; 12 N.Y.C.R.R. §§ 142-1.1 §§ 142-2.1 and 142-2.4(a).

Defendants had a policy to pay class members a daily rate of pay that often did not fulfill minimum wage requirements and did not pay overtime, in violation of federal and state law. Defendants also had a policy of making deductions from Plaintiffs' wages upon hire and throughout their employment for reasons that solely benefitted Defendants. In this District in 2010, Defendants were sued in *Rivera, et al v. Alert Ambulette Service Corp., et al,* 1:10-cv-00348-FB –JO (dismissed in settlement) for wage and hour violations under the FLSA and New York State law.

Plaintiffs seek summary judgment on all claims.

---

[1] *Hudacs v. Celebrity Limousine Service Corp.,* 205 A.D.2d 155, 617 N.Y.S.2d 1006 (App. Div. 3d Dept. 1994).

1

**STATEMENT OF FACTS**

Defendant Alert Ambulette Service Corp. ("Alert Ambulette") is a privately owned company, headquartered in Brooklyn, New York that is owned and operated by Defendant Mark Hanukov. PSMF[2] ¶ 1. Alert Ambulette transports customers to and from medical appointments throughout the five boroughs of New York City. PSMF ¶ 3. Mark Hanukov is personally involved in any issues regarding Plaintiffs' scheduling and pay. PSMF ¶ 6.

Defendants' policy was to pay a daily rate that did not provide all Plaintiffs with the minimum wage for all hours worked and did not pay any Plaintiffs overtime compensation at the rate of time and one half. PSMF ¶ 7. Plaintiffs worked a daily shift of generally twelve hours. PSMF ¶ 8. For example, the named Plaintiffs worked from 7:00 am to 7:00 pm five days a week. PSMF ¶ 8. Defendants paid Plaintiffs a flat rate between $350 and $500 per week for five days of twelve-hour shifts. PSMF ¶ 9.

Plaintiffs occasionally worked a sixth day per week, generally on Saturdays. PSMF ¶ 10. When a Plaintiff worked a sixth day in a single work week, the daily rate for the sixth day varied from $75.00 to $110.00 a day, depending, in part, on the length of the workday, which could be as long as 14 hours. PSMF ¶ 10.

Defendant adjusted Plaintiffs' pay up or down based up whether they worked a longer or shorter shift. PSMF ¶ 11. When a Plaintiff worked more hours in a day than his twelve hour shift, he was usually paid an additional hourly rate. PSMF ¶ 11. However, Defendants reduced a Plaintiff's weekly pay if he was late for any of his scheduled shift times by just a few minutes. PSMF ¶ 12.

Plaintiffs' start and end times were usually more than ten hours apart. PSMF ¶ 13.

---

[2] "PSMF" refers to Plaintiffs' Local Rules 56.1 Statement of Material Facts Not in Dispute in Support of Plaintiffs' Motion for Summary Judgment.

However, Defendants did not provide spread of hours pay to any Plaintiffs as required by New York Labor Law, 12 N.Y.C.R.R. § 142-2.4(a) when Plaintiffs start and end times exceeded 10 hours. PSMF ¶ 13.

Defendants also made deductions from Plaintiffs' wages, in violation of New York State Labor Law. PSMF ¶¶ 14-16. If a Plaintiff received a parking ticket while on the job, including tickets that resulted from the necessary drop-off or pick-up of passengers in front of a medical facility, the amount of the ticket was deducted from the Plaintiff's pay. PSMF ¶ 14. Defendants also made unlawful deductions of $300 from Plaintiffs' wages as a "performance guarantee" when they commenced working for Defendants. PSMF ¶ 15. Plaintiffs were told that deducted wages would be used to cover any future damages to the ambulette, pay for future parking or traffic tickets, and guarantee their proper notice if they left the company. PSMF ¶ 15. Defendants also made deductions from Plaintiffs' pay for accidents, deposits, "ret. Deps", lost radios, maps, parking, purchases, red lights and uniforms. PSMF ¶ 16.

Plaintiffs seek declaratory relief under the FLSA and state minimum wage and wage payment laws that Defendants failed to pay overtime, minimum wage, or spread of hours, and made unlawful deductions from the Plaintiffs' pay.

## ARGUMENT

Defendants' pay policies violated the FLSA and N.Y. Labor Law is several ways. First, Defendants paid Plaintiffs a set daily rate and failed to pay premium overtime pay at the rate of time and one half for all hours over forty in a work week. Second, Defendants failed to pay each and every Plaintiff at the rate of $7.25 per hour as required under federal and state minimum wage laws.[3] Third, Defendants failed to pay Plaintiffs "spread of hours" pay of an additional

---

[3] Some Plaintiffs were paid a daily rate high enough that there is no minimum wage violation.

3

hour's pay at the minimum wage rate when the start and end of work times were more than ten hours apart. Finally, Defendants made deductions from each Plaintiff's pay in the first weeks of work in the amount of $300 as a performance guarantee, and thereafter made deductions from pay for other employer expenses such as parking and traffic tickets, and uniforms.[4] PSMF ¶ 14-16.

**Summary Judgment Principles**

The Federal Rules of Civil Procedure encourage the use of summary judgment to narrow issues for trial and eliminate matters that do not involve genuine issues of material fact. *Celotex v. Catrett*, 477 U.S. 317, 327 (1986). The Rules provide that a party may move for summary judgment on any part of a claim or counter claim, with or without affidavits. Fed. R. Civ. P. 56(a). The Court may render summary judgment on liability even where genuine issues with respect to the amount of damages remain. Fed. R. Civ. P. 56(c). A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Defendants cannot meet their burden of demonstrating disputed facts allowing them to avoid summary judgment, because 1) the facts are undisputed and 2) the Defendants refuse to

---

[4] Only some of the Plaintiffs may have suffered minimum wage violations depending upon the daily rate paid by defendants and the amount of deductions that may have been made in any given week, however, these FLSA and N.Y. Labor Law violations must also be plead and tried under the rules prohibiting the splitting of claims.

supply testimony by anyone with knowledge concerning any of the facts in this case, citing Defendant Hanukov's fear of criminal prosecution and the assertion of the Fifth Amendment privilege against self-incrimination. *See, generally*, 3/15/12 Deposition of Mark Hanukov, PX A, ("*Hanukov Depo.*"). Indeed, the two Defendant corporations refused to testify under Fed. R. Civ. P. Rule 30(b)(6) because the only person who they claimed could do so was Mark Hanukov, and that he would continue to plead the Fifth Amendment on all substantive questions, as he did at his own deposition. *See* Email Exchange Between Parties' Counsel, PX Q. To avoid summary judgment, Defendants must proffer evidence sufficient to create a "genuine issue of material fact" that its drivers did not work overtime or were paid proper wages. Given their refusal to testify in this case, Defendants cannot show any genuine issue of material fact.

Furthermore, although individuals are permitted to exercise their Fifth Amendment privilege in civil proceedings as well as criminal proceedings, courts can draw adverse inferences or presume a violation when a person invokes the Fifth Amendment privilege in a civil proceeding. *See Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("the Court has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause."); *S.E.C. v. Freiberg*, 2007 WL 2692041, *10 (D. Utah 2007) ("courts can draw adverse inferences or presume a violation when a person invokes the Fifth Amendment privilege in a civil proceeding."); *Casey v. Philadelphia Elec. Co.*, 87 WL 9292, *2 -3 (E.D. Pa. 1987) ("the prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences . . . 'where the privilege is claimed by a party to a civil cause." … This is no less true where the invocation of the Fifth Amendment occurred at a deposition, rather than in open court."). *See also Penfield v. Venuti*, 589 F. Supp. 250, 255 (D. Conn. 1984) (same); *U.S. v. Bartesch*, 643 F. Supp. 427, 430 (N.D. Ill. 1986) (same).

5

Defendant Hanukov testified:

15

Q.   Does Alert Ambulette pay its drivers overtime?
        A.   Fifth Amendment.
        Q.   Does Alert Ambulette pay minimum wage?
        A.   Fifth Amendment.
        Q.   Does Alert Ambulette pay spread of hours paid to drivers?
        A.   Fifth Amendment.
        Q.   Do you understand when I say "spread of hours" I mean an additional hour of pay to employees at the minimum wage rate when the driver works from the start of the shift to the end of the shift of work is over ten hours?
        A.   Fifth Amendment.

*Hanukov Depo.*, PX A, at 15:9-23.

Because Defendants cannot offer any testimony to refute the facts as presented by Plaintiff in this case, and because Plaintiffs are entitled to an inference from all Defendants' refusal to testify in this case based on the Fifth Amendment, Plaintiffs are entitled to summary judgment on all claims as set forth below.

**POINT ONE**

**DEFENDANT VIOLATED THE FLSA OVERTIME AND MINIMUM WAGE PROVISIONS OF THE FLSA**

**A.    The FLSA Is a Remedial Statute**

"The principle congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . . [and to ensure that employees] would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, *et al.*, 450 U.S. 728, 739 (1981) (citations omitted). To protect against excessive hours of work, the statute requires that employers pay employees for hours in excess of

6

40 in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Because the FLSA is a remedial statute, its exemptions are narrowly construed against the employer. *Arnold v. Ben Kanowsky Inc.*, 361 U.S. 388, 392 (1960); *Bilyou v. Dutchess Beer Distribs, Inc.,* 300 F.2d 217, 222 (2d Cir. 2002); *Giles v. City of New York*, 41 F. Supp. 2d 308, 316 (S.D.N.Y. 1999) (quoting *Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No., 123*, et al., 321 U.S. 590 (1944)) ("like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. Such a statute must not be interpreted or applied in a narrow, grudging manner."). Employers must demonstrate that they are entitled to a particular exemption to the FLSA overtime requirement. *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d at 614 (2d Cir. 1991).

**B.       Defendants Are an Enterprise Engaged in Commerce**

The Fair Labor Standards Act applies to all employees of an enterprise which has a gross dollar volume of over $500,000.00 on an annual basis under 29 U.S.C. 203(s)(1), and where there are 2 or more employees who are "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. 203(s)(1)(A)(i). Defendant has admitted that Alert Ambulette had gross revenues exceeding $500,000 in 2007, 2008, 2009, 2010, and 2011. PSMF ¶ 4. And Defendants also admit that its drivers drive ambulettes which contain "automobile parts and supplies which were shipped from other states." PSMF ¶ 5. *See Wirtz v. Melos Construction Corp.*, 408 F.2d 626 (2d Cir. 1969) (enterprise handling local ready-mix concrete which has an ingredient that previously came from out of the state is covered; no "coming to rest" doctrine applicable to coverage); 29 C.F.R. § 776.0. Here, by Defendants' admission, the Plaintiffs engaged in handling, … and working on goods that moved in interstate commerce. Defendant Alert Ambulette is an enterprise that is covered by the

FLSA. Defendants have conceded that they are an enterprise engaged in commerce, by their answer to Defendants' Amended Response to Plaintiffs' Request For Documents, PX B, ("*Defendants' Doc Response*"), at 4.

An "enterprise" is defined in 29 U.S.C. 203(r)(1) defines "enterprise" to consist of "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . ". Further explanation is found in the regulatory interpretations of the U.S. Department of Labor:

> all activities which are performed as a part of the unified business operation will be "related," including, in appropriate cases, the manufacturing, warehousing, and distribution of its goods, the repair and maintenance of its equipment, machinery and its premises, and all other activities which are performed for the common business purpose of the enterprise. The Senate Report on the 1966 amendments makes it plain that related, even if somewhat different, business activities can frequently be part of the same enterprise, and that activities having a reasonable connection with the major purpose of an enterprise would be considered related.

29 C.F.R. § 779.206(a). Here, as set forth in POINT TWO of this brief, it is clear that Defendants are related insofar as Bus Company funds pay Plaintiffs for their labor for Alert, and insofar as Mark Hanukov treats the corporate funds of the Bus Company and Alert as his own personal funds and disregards the corporate forms at will. PSMF ¶¶ 20-22. All revenues and expenditures are for the common business purpose, which can be expressed as nothing more than the enrichment of Mark Hanukov personally, without payment of legal wages, without payment of federal and state taxes, and disbursement of pre-tax revenues to Mark Hanukov without regard to the corporate form.[5]

---

[5] 

21   Q.   Mr. Hanukov, did you treat the

22

8

### C.     Defendants Violated the Overtime Provisions of the FLSA

Defendants failed to pay overtime premium pay to Plaintiffs in violation of the Fair Labor

Standards Act, 29 U.S.C. § 206 *et seq*. and its implementing regulations. Under the Fair Labor

Standards Act, any employee is entitled to be compensated for all hours over 40 in a workweek

at the rate of time and one half, unless a specifically enumerated exemption applies. *A.H. Phillips*

*v. Walling,* 324 U.S. 490 (1945). The FLSA overtime provision, 29 U.S.C. § 207(a)(1), states:

> no employer shall employ any of his employees who in any
> workweek is engaged in commerce or in the production of goods
> for commerce, or is employed in an enterprise engaged in
> commerce or in the production of goods for commerce, for a
> workweek longer than forty hours unless such employee receives
> compensation for his employment in excess of the hours above
> specified at a rate not less than one and one-half times the regular
> rate at which he is employed.

*Id.* Here, Defendants simply paid Plaintiffs a straight daily rate, that never varied based on

---

Alert Ambulette funds as your personal funds?
    A.   Fifth Amendment.
    Q.   Did you treat Jacob Hanukov Bus
Company funds as your personal funds?

23

    M. HANUKOV
    A.   Fifth Amendment.
    Q.   Did you buy cigars and liquor for
your own personal use from Alert Ambulette Bus
Company funds?
    A.   Fifth Amendment.
    Q.   Did you go to nightclubs and hotels
on the company credit card?
    A.   Fifth Amendment.
    Q.   Did you go skydiving and go to
Costa Rica on the company credit card?
    A.   Fifth Amendment.
    Q.   What is Junior's Cheesecake?
        (Discussion off the record.)
    A.   Fifth Amendment.

whether the pay was for the first 40 hours, or for hours over 40. Thus, Defendants violated the FLSA overtime provision by failing to pay time and one half for any hours over forty worked in a workweek. PSMF ¶¶ 7, 17.

### D.    Defendants Violated the Minimum Wage Provisions of the FLSA

Defendants failed to pay minimum wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq*. and its implementing regulations. 29 U.S.C. § 206 states:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>> (1) except as otherwise provided in this section, not less than—
>> *** (C) $7.25 an hour***.

*Id.* Defendants set a daily rate for some Plaintiffs so low that the driver's wages divided by the twelve hours worked did not equal $7.25 per hour (or the otherwise applicable minimum wage rate). PSMF ¶¶ 7-9. For example, when a worker was paid a daily rate less than $87, such worker would not be paid the minimum wage. Examples of Plaintiffs paid less than $87 per day are Plaintiffs Antley, Forrester, Lecky and Lewis. PSMF ¶ 9.

### E.    Defendants' Violation of the FLSA Was Willful

The FLSA applies a three year statute of limitations to claims where the employer's violation was willful.[6] *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988); *Bull v. U.S.*, 68 Fed. Cl. 212, 228 (2005). To show willfulness, a plaintiff must show that the employer had

---

[6] 29 U.S.C. § 255(a) states in part: Any action commenced ... after May 14, 1947 to enforce any cause of action for ... unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended[,] ... [on a] cause of action [that] accrues ... after May 14, 1947-may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[7] 12 N.Y.C.R.R. § 142-2.4 states:

10

knowledge of its FLSA obligations or that the employer acted recklessly in not paying overtime. *McLaughlin,* 486 U.S. at 133.

Willfulness does not require bad faith, only a showing of knowledge or recklessness. *McLaughlin,* 486 U.S. at 133. If the employer recklessly disregarded its FLSA obligations, a three-year statute of limitations is appropriate. *Id.* "'Reckless disregard' is . . . the 'failure to make adequate inquiry into whether conduct is in compliance with the Act.'" *Bull v. U.S.*, 68 Fed. Cl. at 272 - 73 *citing* 5 C.F.R. § 551.104; *see Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 141-42 (2d Cir.1999) (reliance on questionable authority is reckless disregard supporting a three-year statute of limitations). *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 40-41 (2d Cir. 1995) (where the law is clear violations are willful, arguments to the contrary notwithstanding); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1296 (3d Cir. 1991) (violation is willful where employer has information that practices violated the FLSA but disregarded it); *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 966-67 (6th Cir. 1991) (where employer receives notice of violation and continues illegal practice, violation is willful); *Reich v. Monfort Inc.*, 144 F.3d 1329, 1334-35 (10th Cir. 1998) (finding violations willful where employer has notice but raised a defense).

Defendant willfully violated the FLSA. PSMF ¶ 17. It withheld overtime wages due Plaintiffs because it did not want to incur the expense of paying overtime, even though it required Plaintiffs to work overtime. PSMF ¶ 17.

61

> Q.   At all times in which you failed to make overtime payments to the drivers who are plaintiffs in this case, you knew that the law required you to make overtime payments to those drivers.  Correct?
>           MR. NARDO:  Objection.
>       A.   Fifth Amendment.
>       Q.   And at all times that you failed to make an additional payment to cover the spread of

11

hours, as required by New York Labor Law for all driver plaintiffs in this case, you knew that you were required to do so by the New York Labor Law.

Q.   Correct?

A.   Fifth Amendment.

Q.   And at all times that you failed to make minimum wage payments to each of the drivers in this case, you knew that the minimum wage law

62

M. HANUKOV
applied to these drivers.  Correct?

A.   Fifth Amendment.

Q.   At the times you failed to make the required legal payments of wages to each of those driver plaintiffs during the period covered by this lawsuit, you did so in order to secure their wages to yourself and Alert Ambulette, and to take that -- those wages from the rightful recipient.
Isn't that true?

A.   Fifth Amendment.

Q.   Did you seek legal advice from anyone concerning your wage and hour practices at Alert?

MR. NARDO:  Objection.
Attorney-client privilege.  And I direct him not to answer that.

*Hanukov Depo.*, PX A, at 61:9-62:17.

63

Q.   Did you have communications with the U.S. Department of Labor in connection with the wages paid by Alert to its drivers?

A.   Fifth Amendment.

Q.   And did you also have communications with the New York State Department of Labor in connection with how Alert Ambulette paid its drivers?

A.   Fifth Amendment.

*Hanukov Depo.*, PX A, at 63:10-18. The inference from Defendants silence is that they knew of

all legal obligations concerning minimum wage, overtime and spread of hours and that they had

been advised of those obligations by the state and federal Departments of Labor.

12

**F.      Defendants Are Liable for Liquidated Damages for FLSA Violations**

An employer found to have violated 29 U.S.C. § 207 "shall be liable" to the employee for unpaid overtime and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Consistent with the statute's plain language, there is a strong presumption that where an employer violates the FLSA, it is liable for double damages, *i.e.*, liquidated damages in an amount equal to the back pay owed. *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 947-48 (2d Cir. 1959).

The purpose of liquidated damages is compensatory, not punitive. *Caserta,* 273 F.2d at 948. A defendant may only be relieved from the FLSA's liquidated damages when it can prove that its failure to pay wages was "in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." 29 U.S.C. § 260; *see Caserta*, 273 F.2d 943. Although the exception exists, the employer's burden of proof is "a difficult one to meet." *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987). "'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich,* 121 F.3d at 71; *accord Herman v. RSR Sec. Services Ltd.* 172 F.3d 132, 142 (2d Cir 1999). Reasonable grounds is an objective standard, and "ignorance is no defense to a claim for liquidated damages." *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 871 (S.D.N.Y. 1984). The Defendants offer no evidence that they acted in good faith. Nor could they: they employed Plaintiffs and paid them under a thoroughly deceptive scheme that defrauded Plaintiffs as well as the IRS and state tax authorities, and had the effect of cheating Plaintiffs out of unemployment and workers compensation, by falsely underreporting their wages. The failure to pay lawful overtime and

13

minimum wage was merely a small part of the pervasive effort to improperly pay and report the

Plaintiffs' wages. The Hanukov deposition testimony cited in the section above, also proves that

Defendants violated the FLSA and state labor law knowingly and intentionally. *Hanukov Depo.*,

PX A, at 61:9-62:17, 63:10-18.

Furthermore, Defendants cannot establish a defense to the double damage rule because

they cannot show they had reasonable grounds for failing to pay the wages owed. *Walton v.*

*United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986) ("A good heart but an empty

head does not produce a defense [to the double damage rule]"). The Defendants cannot offer any

legal advice or analysis of their decision to refuse overtime and minimum wage. Defendants are

liable for liquidated damages under the FLSA.

**POINT TWO**

**DEFENDANTS ARE A SINGLE INTEGRATED ENTERPRISE AND/OR JOINTLY
EMPLOYED THE PLAINTIFFS**

To be held liable under the FLSA, one must be an "employer," which the statute defines

broadly as "any person acting directly or indirectly in the interest of an employer in relation to an

employee." 29 U.S.C. § 203(d). The Supreme Court has emphasized the expansiveness of the

FLSA's definition of employer, *Herman v. RSR Sec. Servs. LTD.*, 172 F.3d 132, 139 (2d Cir.

1999), *citing Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L.Ed.2d 406 (1973), and the

remedial nature of the statute further warrants an expansive interpretation of its provisions so that

they will have "the widest possible impact in the national economy." *Id.*, *quoting Carter v.*

*Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

A.      **Defendant Hanukov Is an Employer of Plaintiffs' Employer**

Mark Hanukov is the sole owner and operator of Alert. He hires, fires, sets wages, hours

and the other working conditions for Plaintiffs and is thus a "joint employer" with the company

14

he manages. PSMF ¶¶ 2, 6. A corporate officer or director is an employer when "the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions." *Zheng v. Liberty Apparel Co., Inc.*, 556 F. Supp. 2d 284, 298 (S.D.N.Y. 2008) (citation omitted).

B.    **Defendants Alert, Bus Company, and Hanukov Are a Single Integrated Enterprise**

Under 29 U.S.C. § 203 (r), Alert, Bus Company, and Hanukov are proper defendants because they are a single integrated enterprise with DTSW and are jointly liable to plaintiffs. Section 203 (r) (1) provides:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

*See* 29 C.F.R. § 779.220-2; 779.206. *See also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969-70 (5th Cir. 1984) (concluding that, despite corporate fragmentation in operation, a single "enterprise" nevertheless exists where: (1) the corporations perform related activities, (2) through unified operation or common control, (3) for a common business purpose); *Reich v. Bay, Inc. et al,* 23 F.3d 110, 116; (5th Cir. 1994); *Donovan v. Janitorial Services*, Inc., 672 F.2d 528, 530 (5th Cir. 1982); *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1366-67 (5th Cir. 1973); *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1299 (5th Cir. 1969).

The FLSA provides that the term "[e]nterprise" means "the related activities performed (either through unified operation or common control) by any person or persons for a common

15

business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or organizational units." 29 U.S.C. § 203(r) (1999). Activities are considered related when they are auxiliary or service activities such as central office and warehousing activities, or bookkeeping, auditing, purchasing, advertising, and other services. *Boekemeier v. Fourth Universalist Society in City of New York*, 86 F. Supp. 2d 280 (S.D.N.Y. 2000) (internal citations omitted).

When different business entities are involved, the critical inquiry is whether there is "operational interdependence in fact." *Id.* (internal citations omitted). Entities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act. *Id.* (internal citations omitted).

Similarly, the Second Circuit summarized the "single employer" doctrine as follows:

> A "single employer" situation exists "where two nominally separate entities are actually part of a single integrated enterprise...." In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise. There is well-established authority under this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger "single-employer" entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.

*Addison v. Reitman Blacktop, Inc.*, --- F. Supp. 2d ----, 2011 WL 4336693, at *10 (E.D.N.Y. 2011), *citing Arculeo v. On–Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005). In determining whether multiple defendants constitute a single employer, courts consider the

16

following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Id.*

The commingling of finances is relevant to whether different entities are one enterprise for FLSA purposes. For example, in *Gonzalez v. El Acajutla Restaurant, Inc.*, 2007 WL 869583 (E.D.N.Y. Mar. 20, 2007), defendants, a jointly owned restaurant, deli and Laundromat, and their owners, contended that they did not, singly or together, constitute any "enterprise engaged in commerce" and that the plaintiffs' claims under the FLSA must therefore be dismissed on summary judgment. The Court denied this portion of defendants' summary judgment motion in part because the plaintiffs alleged in their complaint that the three businesses' finances were commingled. *Id*. at *7.

In this case, Defendant Hanukov is the sole owner and sole officer of both corporate Defendants. PSMF ¶¶ 2, 18. Hanukov takes some of the cash receipts used to pay the Plaintiff drivers from Alert's bank account, exactly matching the amount of wages that he declares to the IRS. PSMF ¶ 19. Hanukov also takes some of the cash receipts of the bus company and pays Plaintiffs who drive for Alert from those funds. PSMF ¶ 20. (The clear purpose of this scheme was to deflate taxable earnings of the Bus Company and surreptitiously pay Plaintiffs wages with tax-free money). Hanukov takes wages freely from both companies to pay Plaintiffs in utter disregard for the corporate form of any corporation under his control. PSMF ¶ 21. Hanukov also freely takes corporate funds for his own personal lavish liquor and cigar expenditures, for vacations, hotels, skydiving, for meals, from both Alert and also from Bus Co. PSMF ¶ 22. Hanukov disregards the corporate form of both companies that he operates.

17

### C.      Defendants Jointly Employ Plaintiffs

Defendants are all plaintiffs' "joint employers" since all of the Defendants pay Plaintiff

drivers for their work for Alert. PSMF ¶ 20. Under FLSA, the employment relationship is broad.

*U.S. v. Rosenwasser,* 323 U.S. 360, 362-363 (1945). The FLSA defines "employee" as "any

individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual

under the FLSA if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g). This

expansive definition accords with the remedial purpose of the FLSA. *Rosenwasser,* 323 U.S. at

363.

More than one employer may employ an individual employee. 29 C.F.R. § 791.2(a) states:

> (a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. 4 ***

> (b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

> ***

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; [FN7] or

[7] Sec. 3(d) of the Act; *Greenberg v. Arsenal Building Corp., et al.*, 144 F.2d 292 (C.A. 2).

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. [FN8]

[8]*Dolan v. Day & Zimmerman, Inc., et al.*, 65 F. Supp. 923 (D. Mass. 1946); *McComb v. Midwest Rust Proof Co., et al.,* 16 Labor Cases Para. 64, 927; 8 WH Cases 460 (E.D. Mo. 1948); *Durkin v. Waldron, et al.*, 130 F. Supp., 501 (W.D. La. 1955). *See also Wabash Radio Corp. v. Walling,* 162 F.2d 391 (C.A. 6).

*Id.* Here, under sections b(2) and b(3) of the regulation, Bus Company is a joint employer of Plaintiffs. The Bus Co. pays the wages of the drivers for their labor for Alert. Bus Co. is thus an "employer … acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee." Bus Co is also a joint employer under sub-section b(3), since "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer". Here Hanukov controls both Bus Co. and Alert and intermingles the funds used to pay them. This is precisely what the Department of Labor determines under b(3) to be joint employment.

**POINT THREE**

**DEFENDANTS VIOLATED THE NEW YORK LABOR LAW**

    **A.**    **Defendants Violated The Overtime and Minimum Wage Provisions of the N.Y. Labor Law**

The state minimum wage and overtime requirements apply to these drivers as well. 12 N.Y.C.R.R. Part 142; N.Y. Labor Law Article 19; 12 N.Y.C.R.R. 142-2.2. State Labor Law

19

virtually duplicates the FLSA. The State statute and regulations require that an employer must pay time and one half, subject to the exemptions of the FLSA. N.Y. Labor Law 663; 12 N.Y.C.R.R. 142-2.2. Under New York state law, the statute of limitation is six years. N.Y. Labor Law 663(3). For the same reasons that Defendants violated the FLSA, they have violated New York's minimum wage and overtime laws.

**B.      Defendants Violated the Anti-Kick Back Provisions of the N.Y. Labor Law**

Defendants' deductions from Plaintiffs wages for uniforms, traffic tickets, maps, radios, accidents, and parking primarily benefit the employer and must be considered unlawful deductions from Plaintiffs wages under New York Labor Law.

> [E]xpenses that primarily benefit the employee will be ordinary living expenses. Further, expenses that are created by the employer because of the nature of the employer's business, or expenses which the employer brings upon himself by the way he chooses to conduct his business, are primarily for the benefit of the employer.

*Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 195 (W.D.N.Y. 2011). New York Labor Law prohibits the deduction from wages for employer business expenses in two sections, §§ 193 and 198-b.

> § 193. Deductions from wages
>
> 1. No employer shall make any deduction from the wages of an employee, except deductions which:
>
> a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
>
> b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

2. No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

N.Y. Labor Law § 193 (McKinney). Section 198-b(2) states:

Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services, be such promise in writing or oral, … it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employees wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.

N.Y. Labor Law § 198-b (McKinney).

Further, the New York Court of Appeals has stated that the New York Labor law is meant to "prohibit wage deductions by indirect means where direct deduction would violate the statute." *See Angello v. Labor Ready, Inc.,* 7 N.Y.3d 579, 585, 825 N.Y.S.2d 674, 859 N.E.2d 480 (2006). It follows, therefore, that an employer may not require an employee to bear an expense, whether prior or subsequent to his actual starting date, that is primarily for the employer's benefit and therefore, in violation of the statute.

*Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 197 (W.D.N.Y. 2011). Defendants' deductions from the Plaintiffs' wages violates the New York Labor Law.

### C.    Defendants Violated the Spread of Hours Provisions of the N.Y. Labor Law

Under the N.Y. Labor Law, Plaintiffs are also entitled to receive unpaid spread of hours compensation for any days during which they worked more than ten hours per day. N.Y. Lab. Law §§ 663(1), *et seq.;* 12 N.Y.C.R.R. § 142-2.4.[7] This District has repeatedly held that when an

---

[7] 12 N.Y.C.R.R. § 142-2.4 states:
An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

21

employee's start and stop times for work in a day are more than ten hours apart, an employer must supplement that employees pay with an additional hour of compensation at the minimum wage rate, here $7.25. *See Santillan v. Henao*, --- F. Supp. 2d ----, 2011 WL 4628752 *4 (E.D.N.Y. Sept. 30, 2011) (" the Court finds that plaintiff is entitled to recover his 'spread of hours' pay under the Labor Law based upon the undisputed allegations that he worked over 10 hours approximately twice a week and was not given an extra hour's worth of wages at minimum wage for those days."); *Wing Kwong Ho v. Target Const. of NY, Corp.*, 2011 WL 1131510 *16 (E.D.N.Y. Mar. 28, 2011) ( "The 'spread of hours' provision of NYLL entitles employees such as plaintiff to one additional hour of pay at the minimum hourly wage for each day they worked over ten hours… [plaintiff] is entitled to an additional hour of pay at the minimum hourly rate in effect during the time he was employed by defendants, … for each day he worked more than ten hours."); *Blue v. Finest Guard Services, Inc.*, 2010 WL 2927398 (E.D.N.Y. June 24, 2010); *Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662 *2 (S.D.N.Y. May 26, 2010); *Said v. SBS Electronics, Inc.*, 2010 WL 1270129 (E.D.N.Y. Apr. 1, 2010).

**D.      Defendants Are Liable for Liquidated Damages for N.Y. Labor Law Violations**

Under N.Y. Labor Law § 198(1–a), "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law", an employee who prevails on a wage claim is entitled to recover "an additional amount as liquidated damages

---

(a) the spread of hours exceeds 10 hours; or
(b) there is a split shift; or
(c) both situations occur.

22

equal to one hundred percent of the total amount of the wages found to be due."[8] As set forth in POINT ONE, Section E, *supra*, Defendants offer no evidence that they acted in good faith. The Hanukov deposition testimony cited in POINT ONE, Section D, *supra*, also proves that Defendants violated state labor law knowingly and intentionally. Furthermore, Defendants cannot establish a defense to liquidated damages because they cannot show they had reasonable grounds for failing to pay the wages owed. The Defendants cannot offer any legal advice or analysis of their decision to refuse overtime and minimum wage. Thus, Defendants are liable for liquidated damages under the N.Y. Labor Law.

Further, most courts in the Second Circuit hold that a plaintiff may recover liquidated damages under both the FLSA and N.Y. Labor Law because the FLSA's damages are meant to be compensatory, while the state damages are meant to be punitive. *See, e.g., Santillan v. Henao*, --- F. Supp. 2d ----, 2011 WL 4628752 (E.D.N.Y. Sept. 30, 2011) ("Liquidated damages under the FLSA are 'compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA.' In contrast, 'liquidated damages under the Labor Law "constitute a penalty," to deter an employer's willful withholding of wages due.' Because each award serves fundamentally different purposes, plaintiff may be granted both awards."); *Lanzetta v. Florio's Enters., Inc.,* 08 Civ. 6181, 2011 WL 3209521 at *5 (S.D.N.Y. July 27, 2011) (Chin, D.J.) ("Because of the different purposes the two forms of liquidated damages serve, plaintiff may recover under both statutes without obtaining an impermissible double recovery."); *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.,* 2010 WL 4159391 at *5 (S.D.N.Y. Sept. 30, 2010) ("Both the FLSA and the Labor Law provide for the payment of liquidated damages in

---

[8] Effective April 9, 2011, New York amended its Labor Law, which previously provided for 25% liquidated damages, to provide 100% in liquidated damages. *Raniere v. Citigroup Inc.*, --- F. Supp. 2d ----, 2011 WL 5881926, FN 16 (S.D.N.Y. 2011), comparing N.Y. Lab. Law § 663 (McKinney 2010) with N.Y. Lab. Law § 663 (McKinney 2011).

appropriate circumstances to employees who have been denied payment of minimum wages or overtime. Under the FLSA, liquidated damages are compensatory, rather than punitive. In contrast, liquidated damages under the Labor Law are punitive 'to deter an employer's willful withholding of wages due.' Because liquidated damages under the FLSA and the Labor Law serve fundamentally different purposes, a plaintiff may recover liquidated damages under both the FLSA and the Labor Law." (citations omitted)). Accordingly, Plaintiffs can recover liquidated damages under both the FLSA and N.Y. Labor Law.

**POINT FOUR**

**DAMAGES MAY BE CALCULATED FOR THE CLASS BASED ON REPRESENTATIVE DAMAGES CALCULATIONS**

Section 16(b) of the FLSA permits employees to bring collective actions "in behalf of … themselves and other employees similarly situated." 29 U.S.C. § 216(b). Much like a Rule 23 class action, a collective action operates to allow representatives to bring the case for a class (the difference being the class is opt-in instead of opt-out). Collective actions under Section 16(b) allows employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

Under the FLSA, representative Plaintiffs are permitted to testify in general form about the duration of work, and the standard for this representative testimony was clearly set by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co., Inc..* "Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees." *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985). Under 29 U.S.C. § 216(b) and *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1957).

24

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946). Here, the Defendants failed

to keep all the required records that would permit an accurate accounting of the amount of wages

due to Plaintiffs. U.S. Department of Labor regulations, 29 C.F.R. § 516.2(a) require that an

employer keep the following records:

> Items required. Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each employee to whom section 6 or both sections 6 and 7(a) of the Act apply:
> ***
> (5) Time of day and day of week on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period). If the employee is part of a workforce or employed in or by an establishment all of whose workers have a workweek beginning at the same time on the same day, a single notation of the time of the day and beginning day of the workweek for the whole workforce or establishment will suffice,
> (6) (i) Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii)

25

explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),

(7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),

***

(9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,

(10) Total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions,

Each of these requirements has been violated by Defendants in this case (as there is no record of the exact start of the work week, the regular hourly rate of pay, the hours worked each day and total hours each week. Without these records, it is not possible to determine the precise amount of back pay owed each worker each week. Nevertheless, under *Anderson v. Mt. Clemens Pottery Co.,* since Defendants failed to keep all required records, employees may discharge their burden of proof by showing the amount of wage underpayment, "as a matter of just and reasonable inference", *Anderson,* 328 U.S. at 687, based on the testimony of representative employees.

In *Anderson,* the Supreme Court affirmed class-wide damages based on representative testimony of seven workers testifying generally about the hours they worked off the clock. Numerous other federal cases have followed suit. *See also Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008) (testimony of seven employees on behalf of class of 1,424 not unfair); *Adams v. U.S.,* 44 Fed. Cl. 772 (Ct. Fed. Cl. 1999) (31 plaintiffs testified for class of 300); *Schultz v. Capital Intern. Sec., Inc.,* 466 F.3d 298, 310 (4th Cir.2006); *Hipp v. Liberty Nat.*

26

*Life Ins. Co.*, 252 F.3d 1208, 1227 (11th Cir.2001) (discussing pattern and practice evidence used to prove discrimination in the ADEA context); *Donovan v. Burger King*, 672 F.2d 221 (1st Cir. 1982) (allowing representative testimony to prevent cumulative evidence because of the "basic similarities between the individual restaurants"); *Dole v. Snell*, 875 F.2d 802 (10th Cir.1989) (allowing representative testimony to address whether plaintiffs were independent contractors when the parties stipulated that the testifying plaintiff was representative); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex.2008) (collecting cases); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir. 2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages"); *Reich v. Gateway Press*, 13 F.3d 685, 701-02 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973) (allowing representative testimony in a case involving unpaid overtime); *Thiebes v. Wal-Mart Stores, Inc.*, 2004 WL 1688544, at *1 (D. Or. July 26, 2004); *National Electro-Coatings, Inc. v. Brock*, No. C86-2188, 1988 WL 125784, at *8 (N.D. Ohio July 13, 1988) ("Courts have consistently allowed, or even required, a small number of employees to testify to establish a pattern of violations for a larger number of workers."); *see also The Fair Labor Standards Act, p.*1333 (Ellen C. Kearns et al., eds. 1999) (noting that it is "well settled" that "not all affected employees must testify in order to prove violations or to recoup back wages. Rather, in most cases, employees and the Secretary may rely on representative testimony"). State wage and hour claims are also handled similarly. In *Vazquez v. Ranieri Cheese Corp.*, 2011 WL 554695 *1 (E.D.N.Y. Feb. 7, 2011), the "Court held that damages, including spread of hours pay, may be determined by calculating the average hours plaintiffs worked in a set time period," *citing Vazquez v. Ranieri Cheese Corp.,* No. 07-cv-464, 2010 WL 1223606, *8, 17 (E.D.N.Y. Mar. 26,

27

2010).

In the present case, Plaintiffs calculated total damages based on documents produced by Defendants in discovery for the named Plaintiffs. *See* 4/5/12 Declaration of Michael Russo, PX S, ("*Russo Decl.*") The resulting calculation of amounts due to each individual are stated in Plaintiffs Damages Calculations Spreadsheet, PX R, ("*Damages Calculations*"), pursuant to Fed. R. Evid. 1006. Since Defendants have failed to provide time sheets for the period February 23, 2012 to March 26, 2012, Plaintiffs have been forced to extrapolate claims for this period. *Damages Calculations*, PX R.

Plaintiffs seek entry of judgment on behalf of all Plaintiffs as a matter of just and reasonable inference. *Anderson, supra.*

## CONCLUSION

Defendants failed to pay Plaintiffs overtime, minimum wage, and spread of hours pay as calculated and shown in *Damages Calculations*, PX R, and judgment should be entered for all Plaintiffs in the amounts shown there.